For the reasons stated, we find no prejudicial error in the case as presented, and affirm the judgment of the Court of Common Pleas.

*Judgment affirmed.*

HAMILTON, P. J., and CUSHING, J., concur.

OWENS *v.* BAKER ET AL.

348

(Decided November 16, 1933.)

*Mr. Allen Mabee* and *Mr. H. M. Rust,* for plaintiff in error.

*Messrs. Cummins & Kramer,* for defendants in error.

SHERICK, P. J.    Bert M. Owens, as the assignee of Boyd C. Lantz, a licensed real estate broker, sought in the trial court to recover commission from C. V. Baker and Gertrude Baker, for the exchange of real estate upon a contract in writing between the contracting parties.    The Bakers, husband and wife, were one of the contracting parties.    The cause was tried without the intervention of a jury, and resulted in a judgment of dismissal, from which error is now prosecuted.

The petition in substance avers that Lantz was a duly licensed real estate broker, and that the plaintiff Owens is his assignee.    It recites that on the seventh day of September, 1932, Lantz by his efforts procured the execution of a contract for the exchange of real estate between one Adams and the defendants, and that this contract of exchange was ultimately executed by the parties.    The contract provided that it was mu-

tually agreed that the value of the defendants' property was to be considered as $17,633, and the property of Adams as of the value of $8,300. The following covenant, which was a part of the agreement, is here set forth:

"Each agrees to pay to Boyd C. Lantz, the commission which is customary to the realtors of Mansfield, Ohio, upon the above agreed valuation of the property which he hereby agrees to exchange."

It is further alleged that the customary commission paid realtors in the city of Mansfield was and still is three per cent. of the exchange value of the properties. The prayer is for judgment in the sum of $528.99, with interest from September 7, 1932.

To this petition the defendants answer and admit that Lantz was a duly licensed broker, and that he, Lantz, was instrumental in securing the signing of the written agreement, and that the contract contained the provisions set forth. The remaining averments of the petition are denied.

As a first defense it is pleaded that in order to secure their execution of the contract, which had already been signed by Adams, Lantz verbally promised that he would make no charge against them for any commissions; that relying upon this verbal promise they signed the contract; and that had Lantz not so promised the exchange contract would not have been signed.

By way of cross-petition the defendants repeat their former admissions, and aver that the clause in the contract pertaining to payment of commissions was left in the contract by mistake and oversight on the part of the defendants and Lantz, and asked that the contract be reformed. The plaintiff's reply denies the new matter as alleged.

In order that the issues may be quickly narrowed it should now be said that the testimony of the defendants clearly indicates that they read the contract and knew that the commission clause was embodied therein

when they signed the instrument. There was therefore no mistake or oversight proved or shown, and the trial court was right in its refusal to reform the instrument. This conclusion, in view of the well known rules in such case, needs no citation of authority to fortify it.

At the inception of the trial it was stipulated as follows:

"It is admitted that Boyd Lantz is a duly authorized and licensed real estate broker, and the pleadings admit the execution of the contract. It is admitted the customary commission in the city of Mansfield for the sale or trade of real estate was and is three per cent."

Immediately thereafter the plaintiff offered testimony in proof of his allegation that he was the assignee and *bona fide* holder of Lantz's claim. This fact is at no place denied throughout the report of the trial. It must therefore be taken as true. The plaintiff then offered in evidence the exchange agreement, which was received without objection on the part of the defendants or reservation on the part of the trial court. At this point the plaintiff rested his case.

We must and do now confess that under the admitted and proven facts set forth we are unable to see why the plaintiff was not entitled to a recovery, unless it be that the defense of a prior or contemporaneous verbal agreement between the parties to this action should supersede the written contract sued upon. It is our view that such a defense, when not accompanied by a charge and proof of fraud in the inducement to a contract, is not a proper or sufficient one. We believe that counsel for defendants in error silently entertain a like understanding. At least their argument suggests the assumption of the burden in this court.

The main grounds of error relied upon are that the trial court erroneously admitted defense testimony as to the contemporaneous verbal promise of an understanding with Lantz; that the trial court considered

the action as one not upon contract, but upon *quantum meruit,* and that the paper writing was not intended as evidence of a contract for a commission; that the court determined as a matter of law that the exchange agreement was not admissible for the purpose of proving a contract for commission, after the same had been offered and received in evidence without objection or reservation, as the record shows; and in concluding that testimony is not admissible on the subject as to the customary commission, when none was offered or necessary because of the fact that such had been stipulated and admitted. These questions are, of course, embodied in the claimed errors asserted in that the judgment should have been given for the plaintiff, and in the court's refusal to grant a new trial.

It must be recognized that it is a generally accepted rule, as stated in 2 Page on Contracts (1st Ed.), Section 1189, that:

"If the parties to a contract have reduced it to writing, they must intend such writing to be the repository of their common intention. It merges all prior and contemporaneous negotiations. Accordingly, a contract in writing complete on its face, cannot be contradicted by extrinsic evidence, nor can prior or contemporaneous parol agreements be used to contradict the written contract, so as to substitute for the intention therein expressed, that expressed in such oral agreements."

Like most rules, exceptions have been engrafted thereon. It is therefore our purpose to discover if this testimony was competent upon any theory. The same author, considering cases outside the terms of the rule, has this to say in Section 1197:

"The parol evidence rule has but a limited application to contracts and memoranda which are incomplete on their face. Extrinsic evidence is admissible to show the other terms of such a contract as far as consistent with the terms in writing."

We would digress to state at this point that this exception was applicable to the incompleteness of the commission agreement on the part of the plaintiff as to the amount due him on the contract, had the same been necessary, which it was not, in view of the admission by the stipulation that three per cent. was the usual brokerage commission in Mansfield. Had proof of this fact been required by oral testimony, it would not have been inconsistent with the written terms of the instrument, but would have been explanatory of exactly what the parties contemplated and provided. It is not the purpose of the rule to forbid extrinsic evidence in general, but only such evidence as is intended to supersede and destroy the clear intention set forth in the written contract.

It cannot rightly be maintained that the defense testimony of the oral agreement was admissible upon the theory that the oral contract was an inducement irrespective of the fact that fraud was not claimed therein, for there was no breach of an oral contract which would discharge the written contract. The broker had made no promise to perform any act as a precedent to the written contract's becoming a binding obligation. Neither is the evidence competent on the theory that the existence or validity of the contract was in issue. Its existence is admitted. Its validity was recognized, and the contract of exchange performed.

We understand it to be the rule that where consideration is a contractual term in the written instrument, an oral agreement cannot be received in evidence to vitiate the express covenant. If such were not the true rule there would be no reason or little sense in parties reducing their agreements to writing. See Section 1205 of the authority cited.

The defendants mainly base their judgment upon the authority of *Kling, Admr.,* v. *Bordner,* 65 Ohio St., 86, 61 N.E., 148, and *Jacobs* v. *Joseph E. Copp Co.,* 123

Ohio St., 146, 174 N.E., 353. The first case deals with a situation arising under the inhibition of Section 8621, General Code. The second case is of like kind, having to do with a contract very like the one herein sought to be enforced. Two things, however, differentiate it from the case at bar. The amount of commission therein provided for was in blank, and proof thereof was not possible, for the statute then provided that contracts of this character were required to be in writing. This statute was amended by the 89th General Assembly, 114 Ohio Laws, 110, and it now contains no such inhibition as against brokerage contracts. These cases simply hold that when a contract sought to be enforced is required by the statute of frauds to be in writing, it must be complete within itself without resort to parol testimony to disclose its terms.

The *Jacobs case, supra,* is of further interest in this action by reason of the defendants' claim, in that Lantz, the broker, was not a party to the contract, and hence his assignee, the plaintiff, is not in privity, but is only a stranger to the contract; and being a stranger the defendants may show the verbal agreement and the plaintiff can not enforce the written contract. It will be noted that the brokers, in the *Jacobs case,* did not sign the trade agreement in that case, and the court made no question of the agent's privity. If there was no privity of contract there was no enforcible contract. The court must have recognized that privity did exist.

A well-considered case is to be found in *Smith* v. *Watters,* 38 Ohio App., 437, 176 N. E., 466, which is of interest here for two reasons. The first paragraph of its syllabus recites what we determine to be sound in law, under the theory that parties may contract for the benefit of a third person. The syllabus in part reads:

"A written promise to pay a commission to a real estate broker, signed by the party to be charged, and

relied upon by the broker, is sufficient upon which to base an action at law to recover said commission, although the promise is contained in a contract in which the broker is not a party.''

The defendants make the point that the plaintiff's, or rather his assignor's, services were fully completed when the defendants signed the contract, and 'that therefore, being an executed or past consideration, such may not support their promise to pay the plaintiff his commission.

In their answer the defendants style the contract as Adams' proposal. Perhaps they were right therein. The fact is disclosed from the evidence that Lantz, after the instrument's execution by the defendants, delivered to Adams a copy of the executed contract and advised him that his offer was accepted. This was a service valuable to the contracting parties, and from which the defendants doubtless profited.

*Smith* v. *Watters, supra,* considers this point on pages 442 and 443. It is worthy of perusal. We subscribe to the view therein stated, that is, if there was no express contract to pay a commission prior to the defendants signing the contract there was an implied contract and legal obligation to pay for the broker's services, which he was then performing for them and from which they expected to and did secure a benefit. The defendants did not anticipate and had no right to presume that the realtor's services were to be gratuitously rendered. When one calls upon another for, or receives from him, beneficial services in his chosen vocation, which is that other's means of livelihood, he should expect to pay therefor.

Elliott on Contracts, Volume 1, Sections 205 and 214, points out that all past considerations are not in fact the equivalent of ''no consideration.'' The author recognizes that a consideration may be rendered or performed at different times. Hence consideration with reference to the promise may be concurrent,

executed, executory or continuing. In considering what is an executed consideration Elliott adopts the definition of Anson, which we quote:

"Where the benefit in contemplation of which a promise is made is conferred at the same time that the promise acquires a binding force,—where it is the doing of an act that concludes the contract,—then the act so done is called an executed or present consideration for the promise."

The author continues, and clearly shows that all "executed considerations" are not "past considerations" in the light that there is "no consideration," and in conclusion rightly says:

"That which is often called a past consideration may support a subsequent promise where there was a request, either actual or implied under such circumstances as evidence an intention that there should be a recompense."

It is our conclusion that the true test as to whether a consideration is past or otherwise is to be measured by the justice of, the case and the benefits derived, and from which an implied contract might reasonably be inferred; and this should be especially true if it is evident that the services were not intended to be gratuitously rendered. The English courts tersely state that "a past consideration will support no other promise than such as would be implied by law." We hold in this case that there was such an implied promise, and that there was a sufficient consideration.

One further matter draws our attention. The defendants made proof that the plaintiff had previously sued Adams for all commissions provided in the contract upon the theory of a verbal contract made between Adams and Lantz prior to the defendants' execution of the written contract. We learn that the plaintiff failed in that endeavor. The petition in that case is before us, but we are uninformed as to the defense made or the court's reason for its holding. We

experience no great difficulty, however, in perceiving why the plaintiff might have lost. He, no doubt, was confronted with the written contract which superseded any prior verbal understanding. We have herein previously considered this rule. Further comment should be unnecessary.

Defendants say that the plaintiff having construed his contract this court should adopt that construction, and that he should be bound thereby. We would suggest that estoppel was not pleaded, and, if it had been, it would have been ineffectual for the reason that the plaintiff's action was due to a mistake as to law and choice of remedy. He should not be precluded thereby. He did not construe the written contract, rather he brought suit on a prior verbal agreement which no longer existed.

It is the judgment of this court, in view of the fact that the issuable facts are not in dispute, and the issues presented are but questions of law, that the judgment be reversed and final judgment entered for the plaintiff in error as prayed for.

> *Judgment reversed and judgment for plaintiff in error.*

Lemert and Montgomery, JJ., concur.