MAY *v.* DELPHOS IMPROVED RENTALS, INC.

(No. 82 CVF 137—Decided November 16, 1982.)

Van Wert Municipal Count.

*Messrs. Runser & Hatcher* and *Mr. W. Edward Hatcher,* for plaintiff.

*Messrs. Marsh, Minzing & Metzner* and *Mr. John A. Metzner, Jr.,* for defendant.

WALTERS, J. This cause came on for trial and upon the evidence and arguments of counsel. The facts in the case are as follows: On May 2, 1980, the defendant listed for sale with plaintiff, a licensed real estate broker, a certain property on West Eighth Street in the city of Delphos. The listing ran from May 2, 1980 to July 3, 1980, and was later extended to October 1, 1980, by interlineation. The plaintiff had no listing for the property from October 1, 1980 until April 6, 1981. On April 6, 1981, a new listing was given by the defendant to the plaintiff, which listing ran until September 30, 1981. The first listing which ran from May 2, 1980 to

October 1, 1980, contained a notation on the back of the defendant's copy which said, "We reserve to sell to Assembly God Church." This notation, however, does not appear on the plaintiff's copy of the listing agreement which is a carbon copy of the defendant's copy. The second listing which ran from April 6, 1981 to September 30, 1981, contains no reservation of a right on the part of defendant to sell to the Assembly of God Church on either copy. On the 29th day of July, 1981, the defendant, Delphos Improved Rentals, Inc., sold the property covered by the listing to the First Assembly of God Church, Inc., for the sum of $21,000. This sale by the defendant was within the period covered by the plaintiff's listing to sell the property and the plaintiff brings this action for the real estate broker's commission on the sale of the property.

The defendant claims that the first listing contained a reservation to the defendant of a right to sell the property to the First Assembly of God Church without payment of a commission to the plaintiff. The defendant's second contention is that plaintiff's second listing was a continuation of the first listing and that therefore the reservation of the right to sell to the church on behalf of the defendant extended to the second listing even though it did not appear thereon. In discussing the defendant's first contention, namely, that the first listing reserved the right on behalf of the defendant to sell to the church, as pointed out previously the words, "We reserve to sell to Assembly God Church," appear on defendant's copy only and do not appear on plaintiff's copy. Since plaintiff's copy is a carbon copy of defendant's copy and since there appears to have been no erasure on plaintiff's copy, the court feels that this raises serious doubts as to whether or not a reservation of a right to sell on behalf of defendant was ever effectively made. There is no question that defendant intended to reserve a right to sell to the church. The defendant's

treasurer, James A. Weger, testified that he placed the words, "We reserve to sell to Assembly God Church," on defendant's copy. The plaintiff's salesman, Vernon Kill, testified that he was present at the time the original listing was signed by James A. Weger on behalf of the defendant and that he signed the original listing on behalf of the plaintiff and he denied any knowledge of the reservation. This, in the court's opinion, raises a serious doubt as to whether or not the defendant's intention to reserve a right to sell to the church was ever carried into effect.

The defendant's second contention is that the second listing from the defendant to the plaintiff was a continuation of the first listing. The court cannot agree with this contention. The first listing expired on October 1, 1980, and from that time until April 6, 1981, the plaintiff was without any listing or authority or right to sell the property. Consequently, the court regards the listing granted on April 6, 1981, to the plaintiff by the defendant and extending to September 30, 1981, as a new and independent agreement which has no relation to the original listing entered into on May 2, 1980.

Coming now to consider the question of whether or not the plaintiff can recover the broker's commission on the sale of the real estate, which sale was made by the defendant, we find the following in 10 Ohio Jurisprudence 3d 114-115, Brokers, Section 81:

"As a general rule, the mere placing of property in a broker's hands for sale, or the conferring upon him of a mere right to sell, does not deprive the owner of the right to sell his property or prevent him from effecting a sale through another broker. Nor does the fact that the agency of the broker is made exclusive prevent a sale by the owner himself; it simply prevents him from selling through the medium of another broker. But a distinction must be drawn in this respect between an exclusive agency to sell and an exclusive right to sell; it is held that the conferring of an exclusive right to sell excludes the sale by the owner himself. Thus, under a contract by an owner of real estate giving a broker the exclusive right to sell property during a definite period of time, the broker is entitled to a commission if the property is sold during the life of the contract through the efforts of the owner or another broker. Clearly, if an owner of real estate makes a contract with a broker, stipulating that the broker shall be entitled to the commission if a sale is made within the designated time regardless of who makes it, he is bound by its terms."

In the present case, the listing granted by the defendant to the plaintiff provides at the top of the agreement in large letters, "Exclusive right to sell or exchange." In the body of the agreement it provides:

"In consideration of your agreement to use your efforts in finding a purchaser for my property I hereby grant you the exclusive right from the date hereof up to and including September 30, 1981, to secure a purchaser for the property known as 339 West Eighth Street, Delphos, Ohio, and more fully described and initialed on the reverse side for the sum of $26,950.00 payable cash or at any other price, terms or exchange to which I may consent.

"If you are successful in finding a purchaser for my property *or if the same is sold or exchanged during the term of your exclusive right,* * * * I agree to pay you a fee for professional realty services of six per cent (6%) upon the price at which the same may be sold or exchanged. * * *" (Emphasis added.)

We see in the present case the clear and plain language of the agreement gives the broker the exclusive right to sell and provides that the broker shall be paid a commission if the property is sold during the term of the exclusive right to sell, which in the agreement was from April 6, 1981 to September 30, 1981.

Also, in this connection, see *Bell* v.

*Dimmerling* (1948), 149 Ohio St. 165 [36 O.O. 505]. In that case the court in the syllabus stated:

"A written instrument, signed by the owner of real estate and accepted by a licensed real estate agent, which provides in substance that in consideration of the agreement of the agent to use his efforts to find a purchaser for such real estate he shall have the exclusive right for a specified time to sell the same and if the same is sold during such time the owner will pay a stated commission, becomes a contract binding on the owner when the agent does in fact use his efforts to find a purchaser, and if the owner sells the property during the time specified, he is liable to the agent for the payment of the stated commission."

The defendant claims that there were oral discussions and oral agreements that a sale to the First Assembly of God Church by the defendant was to be excluded from the listing with the broker. This, however, does not appear on the face of the contract of listing in this case. In this regard see 10 Ohio Jurisprudence 3d 155, Brokers, Section 107, which provides:

"The general rule that where the agreement of the parties has been reduced to writing, the written contract supersedes all prior negotiations, and parol evidence of a contemporaneous oral agreement is not admissible to prove a different intention of the parties, is applicable in actions by brokers to recover compensation. Thus, under this rule, parol evidence is inadmissible to show a contemporaneous agreement to except a sale made to a certain prospective purchaser from the operation of the brokerage contract."

Further, see *Smith* v. *Geis* (1910), 13 C.C. (N.S.) 336, wherein the court said:

"In an action to recover commission under a written contract with a real estate agent whereby he is allowed a commission in the event the property is sold through the efforts of the agent, owner, or any other person during the existence of the contract at any price acceptable to the owner, parol testimony is inadmissible to show a contemporaneous agreement to except a sale made to a certain prospective purchaser from the operation of the contract."

Also on this question, see *Owens* v. *Baker* (1933), 48 Ohio App. 347 [1 O.O. 518].

The court therefore finds that the property in question was sold by the defendant during the period of plaintiff's exclusive right to sell or exchange the property, that the same was sold by the defendant to the First Assembly of God Church for the sum of $21,000, and that the plaintiff is entitled to a broker's commission of $1,260 under the clear provisions of the broker's contract.

*Judgment for plaintiff.*