CALDWELL, PLAINTIFF, *v.* UNITED PRESBYTERIAN CHURCH OF NORTH KINGSVILLE, OHIO, DEFENDANT.

Common Pleas Court, Ashtabula County.

No. 48077. Decided July 31, 1961.

*Mr. Charles C. Goldman*, for plaintiff.
*Mr. Edward L. Green*, for defendant.

PONTIUS, J.  This cause came on for trial by the Court, a jury having been waived by both parties in open court, on the 30th day of June, 1961, and continued through the 3rd day of July, 1961, and was submitted after arguments of counsel upon the Petition, Answer and the evidence.

The petition sets forth a cause of action upon a written contract whereby Plaintiff seeks recovery for fees and services

as an architect in preparing plans and specifications for a building to be erected by the Defendant. Plaintiff alleges that his fees were to be four and one-half per cent of "the completed cost" of the building, which he claims aggregated the sum of $57,800.00. Plaintiff's claim is for $2,601.00, less a credit payment of $1,046.25, or a balance of $1,554.75, which he claims with interest from June 23, 1956, the date when the partial payment was made.

Defendant admits the execution of the written contract, denies the cost of the building aggregated $57,800.00, denies that Plaintiff furnished all of the services called for by the terms of the contract, and denies generally all other allegations of the petition including any balance owing to Plaintiff.

The written contract, dated July 23, 1955, is the standard form of contract used by the American Institute of Architects and was prepared by Plaintiff. Therefore, it must be strictly construed against Plaintiff and in favor of Defendant. The contract describes a building, for which plans and specifications were to be prepared, only as "a building for religious, recreational, Sunday School and other allied purposes." Clause 1 of the contract defined the architect's services in the ordinary manner calling for the preparation of preliminary plans and specifications, large scale and full size detailed drawings for structural, plumbing, heating and electrical work. The contract called for payment of architect's fees on the basis of "four and one-half per cent of the cost of the work." Upon preparation of the preliminary studies or plans, fifty per cent of the total fee, based on "reasonable estimated cost," was to be paid. The balance of the fee was to be paid upon completion of the specifications and general working drawings "computed on a reasonable estimated cost based on such completed specifications and drawings, or if bids have been received, then computed on the lowest bona fide bid." The cost of the work excluded architect's fees and was to include the market cost of any labor or material furnished by owner below market cost.

With respect to the type of building to be erected, the contract contains nothing concerning many things which an architect would have to know from the owner in order to design and draw plans for a building. Just a few of such items are: size of

building, whether one or two stories, whether frame, brick or stone construction, number and size of rooms, type of heat, whether steam or hot water or hot air. There is nothing in the written contract with respect to approximate cost of construction.

As heretofore noted, Plaintiff has predicated his claim upon an express contract. No claim is made for recovery on the common count of quantum meruit for the reasonable value of services performed.

In deciding the issues, the following matters must be determined:

1. What was the contract between Plaintiff and Defendant?

2. Has Plaintiff substantially performed his part of the contract?

3. If so, has the Defendant breached the contract?

The evidence shows that numerous conferences were held between Plaintiff and Defendant prior to the execution of the written contract, and it seems to the Court that the very nature of the contract calls for discussion between the parties of the kind of building desired, and minutely so as compared with the description set forth in the written contract. It also seems evident that the owner naturally would have in mind a figure on cost of construction beyond which it would not go or could not afford, and the Court cannot help but note that the natural thing to do in negotiating with the architect for building plans and in discussions concerning his services would be to discuss such cost limitations. Can it reasonably be inferred that Defendant was willing to leave all matters of cost to the discretion of the Plaintiff? Is this what the wording of the contract really means? The Court thinks not.

Defendant offered testimony to the effect that in a meeting with the Plaintiff prior to the execution of the contract Plaintiff was told the Defendant had placed a limit of $40,000.00 total cost ''or $45,000.00 at the very outside.'' Plaintiff did not deny this contention of the Defendant. The question then arises as to whether or not this cost limit became an implied part of the written contract so that its true terms would mean that Plaintiff agreed to prepare plans and specifications for a building at a total cost to the Defendant of not to exceed, in any event, $45,000.00.

The parol evidence rule is applicable to written instruments only to exclude evidence which would supercede and destroy the intentions of the parties as set forth and expressed in the written instrument. See *Owens* v. *Baker*, 48 Ohio App., 347. Parol evidence which does not contradict the terms of the contract but only supplies an omission in it is admissible. This is on the theory that where the written contract is ambiguous, uncertain, obscure or doubtful—that is, where it is obvious that the written contract does not contain the entire agreement of the parties—in order to ascertain the true intentions of the parties, parol evidence respecting the circumstances of the parties at and prior to the execution of the contract, and the oral agreements made at the time of executing it, are admissible so long as they do not contradict the terms of the written instrument. 70 A. L. R., 572; 20 American Jurisprudence, 984; *Hildebrand* v. *Fogle*, 20 Ohio, 147; *Howard* v. *Thomas,* 12 Ohio St., 201 (rule recognized but not applicable); *Randall* v. *Turner*, 17 Ohio St., 262; *Masters* v. *Freeman,* 17 Ohio St., 323; *Merchants National Bank* v. *Cole*, 83 Ohio St., 50; *Buschmeyer* v. *Advance Machinery Company,* 7 Ohio App., 202; *Frankel Chevrolet* v. *Snyder*, 37 Ohio App., 378.

In numerous cases this very same standard form, American Institute of Architects contract, without a cost limitation inserted therein, has been construed to be ambiguous, and parol evidence has been admitted to prove the agreement of the parties regarding cost limitations. The following are some of such cases:

*Almond* v. *Alexander*, 23 S. W. (2d), 611 (Ark.) ; *Crawford* v. *France*, 27 Pac. (2d), 645 (Cal.) ; *Spitz* v. *Brickhouse,* 123 N. E. (2d), 117 (Ill.) ; *Loyal Order of Moose* v. *Faulhaber*, 41 N. W. (2d), 535 (Mich.) ; *Bair* v. *School District*, 146 Pac., 347 (Kans.) ; *Rosenthal* v. *Gauthier*, 69 So. (2d), 367 (La.) ; *Wick* v. *Murphy*, 54 N. W. (2d), 805 (Minn.).

The Court concludes, as a matter of fact, that the Defendant did make the oral statements to Plaintiff concerning the limitations on costs, and that Plaintiff proceeded with the preparation of plans, specifications and so forth well knowing that cost limitation and thereby agreed to it. Therefore, this limitation on total cost to the Defendant is a part of the written

contract just the same as if it were embodied within its written terms.

The next question to resolve is whether or not Plaintiff performed the contract by furnishing plans and specifications which would permit the erection of a suitable building within the cost limitation of the contract. It appears from the evidence that upon presentation of the preliminary plans, Plaintiff presented a bill for fifty per cent of his fee based on Plaintiff's then estimated cost of $46,500.00. Recognizing the proposition that an architect probably is to be granted some leeway on cost limitation, it might be considered, although not necessary to decide in this case, that Plaintiff's own estimate of $46,500.00 at that time was reasonably within the limits of the contract although not technically so. From the evidence it appears that thereafter Defendant called for bids for the construction work based on the plans and specifications provided by Plaintiff. The lowest bid received for the construction of the shell alone (to use the term of both parties throughout the trial to mean the building proper exclusive of heating, plumbing and electrical work) was $44,000.00. It then became apparent to the Defendant that the completed building could not be constructed within the cost limitation of $45,000.00, and Defendant communicated several times with Plaintiff concerning proposed modifications in the plans and specifications with a view to redrafting same in order to bring down the cost.

While Plaintiff submitted evidence tending to show that new working drawings were thereafter submitted, the entire evidence of the Plaintiff on this point is, to say the least, indecisive and unsatisfactory, and nothing whatever was offered relative to lower costs. No exhibit in the nature of a blue-print was offered by Plaintiff.

Defendant, on the other hand, submitted direct, positive testimony of two of its officers who were originally engaged in negotiations with Plaintiff concerning this contract, and also the testimony of the Financial Secretary of its Building Committee and of the contract who eventually installed the heating and the plumbing, all of which testimony, in substance, showed that no revised working plans were submitted by Plaintiff. Testimony showed that major changes were made by

others in the working plans for the heating, plumbing and electrical work.

The testimony of the Plaintiff showed that at the time of submitting his revised bill for services rendered, he used, as the basis for such bill, the following figures:

| | |
|---|---|
| Estimated cost of shell, based on lowest bid | $44,000.00 |
| Cost of electrical work, estimated by Plaintiff | 5,000.00 |
| Cost of plumbing, estimated by Plaintiff | 5,300.00 |
| Cost of heating, estimated by Plaintiff | 3,500.00 |
| TOTAL | $57,800.00 |

Thus it is apparent without question, from Plaintiff's own testimony alone, that the reasonable estimated cost of the structure, if built according to his plans and specifications, would have been $57,800.00, or $12,800.00 in excess of the cost limitation placed by Defendant.

Much emphasis was placed by Plaintiff throughout the trial on the fact that after preparation of the initial plans and specifications a building permit was obtained from the State by Plaintiff. A part, at least, of Plaintiff's theory seems to be that because a building permit was obtained on the strength of the plans and specifications that Plaintiff was entitled to recover on the basis of his own estimated cost. Plaintiff claimed that the original working drawings were changed, which fact was denied by Defendant; but Plaintiff also claims that after the changes were made, no new building permit was issued nor in fact needed and that all that was required was for Plaintiff to get oral approval from the State office, which was done in a telephone conversation.

Defendant's testimony showed that approval of the final working plans and specifications for heating, plumbing and electrical work were obtained from the State by the contractors who did this particular part of the work, and each prepared his own plans. The Court fails to see where the granting of the original building permit is of any great import.

Before passing the question as to whether or not Plaintiff prepared a revised set of working drawings to bring down the

cost within the contract limitations, it should be pointed out that if Plaintiff prepared a revised tracing of such working drawings, as one of Plaintiff's exhibits would tend to indicate, this fact alone would be of no benefit to Defendant unless blueprints from it were made and furnished the Defendant, which the Court finds was not done. Preparing a revised tracing without more, would not, in the Court's opinion, fulfill the requirement of working plans in the hands of the Defendant even if it were shown by the evidence (which, in fact, it was not) that the revised tracing would permit erection of a completed building within the cost limitation.

For all of these reasons, the Court concludes that Plaintiff has not substantially complied with the terms of his written contract, and, therefore, is not entitled to recover in this action. This conclusion is supported by the decisions in the cases heretofore cited and also by *Brooklyn Savings & Loan Company* v. *Tousley*, 16 O. C. C. (N. S.), 560, and *Kunz* v. *Torbeck*, 31 O. L. R., 373. In each of these last two cases, as in the present case, the cost to the owner would have exceeded the agreed cost limitation by approximately twenty per cent. In the *Brooklyn Savings & Loan case*, which was affirmed without opinion in 80 Ohio St., 737, the Court held:

"Where the contract of an architect called for plans for a building which would cost, as nearly as possible, $40,000.00, and the plans prepared were for a building that would cost $50,000.0, the architect is not entitled to any fees therefor."

In the *Kunz case*, the Court held:

"1. Where an architect submits estimates on the probable cost of a building and draws plans for the type of building desired, he may recover compensation provided the actual cost of the building turns out to be approximately or reasonably near the estimated amount.

"2. But where the lowest bids obtainable for erecting such building exceed by more than twenty per cent the estimate given by the architect, the cost is not approximately or reasonably near the estimate, and the architect may not recover compensation when his client is unable to use the plans because of lack of funds to meet the higher cost."

Plaintiff's petition is, therefore, dismissed, and judgment

is rendered against the Plaintiff for the costs herein. Exceptions for Plaintiff noted. The Court will prepare and furnish counsel with a copy of Journal Entry in accordance with this opinion.