JAMES A. BROCKMAN v. DETROIT DIESEL ALLISON DIVISION OF
GENERAL MOTORS CORPORATION

[No. 2-1175A336. Filed September 13, 1977. Rehearing denied November 1, 1977.]

*Vernon J. Petri, Richard W. Lorenz, John J. Fuhs,* of Spencer, for appellant.

*Raymond Gray, Edward O. DeLaney, Barnes, Hickam, Pantzer & Boyd,* of Indianapolis, *Frazer F. Hilder,* of Detroit, Michigan, for appellee.

## CASE SUMMARY

BUCHANAN, J. — Plaintiff-Appellant James A. Brockman (Brockman) appeals from a judgment on the evidence in a defamation action brought by him against Defendant-Appellee Detroit Diesel Allison Division of General Motors Corporation (Allison), claiming error because the defamation was actionable per se; there was an unprivileged publication of a defamatory statement to a third party; and that even if the utterance were qualifiedly privileged, there was evidence of malice.

We affirm.

## FACTS

The facts and evidence most favorable to the trial court's judgment are:

Brockman was employed by Allison as a "metal former" in the welding department. He operated a machine known as a flame cutter which consists of several torches used to cut metal parts.

On October 31, 1973 Brockman operated the flame cutter during the day shift. Shortly after the night shift took over the general foreman, George Pannell (Pannell), received a call requesting him to examine the flame cutter. He discovered that the tips of the torches on the gas operated machine had been plugged up with debris so that they would not light, thereby causing a serious safety hazard.

After determining that the tips had been plugged intentionally and considering who had access to the room, the men involved,

and the possibility of a frame-up, Pannell concluded that Brockman was responsible.

The next day, November 1, 1973, Pannell asked Brockman if he had any idea how the foreign material had gotten into the tips. Brockman did not have a satisfactory answer, so Pannell discharged him for having violated Shop Rule 33, Sabotage.

That same day Brockman filed a grievance seeking reinstatement "with full seniority, pay for all lost time and my record cleared of the incident."

In accordance with the established grievance procedure a meeting was held on November 5, 1973 between certain representatives of the United Auto Workers Union, Local 933 (Union) and a representative of management to consider Brockman's grievance. At this meeting, an informal one, the circumstances of Brockman's discharge were discussed.

Jerry Cummins, a union zone committeeman in the same department but on a different shift from Brockman, was present and participated in the discussion at this meeting. It was this discussion before Cummins of the circumstances of Brockman's discharge which constitutes the alleged defamation.

Prior to the meeting Cummins had been informed by other union representatives of Brockman's discharge and while he was not required to be present at this particular meeting, he was also a member of the shop committee which was an integral part of the grievance procedure representing employees on behalf of Local 933. As Cummins testified, we "do all we can to represent anybody, even if they're right or if they're wrong. Anybody you know." He further testified that the meeting in question was an informal one where anyone involved in the grievance procedure may help get the grievance resolved . . . they are "more than welcome to add their two cents worth."

Brockman's grievance was not resolved at this meeting and he remained unemployed during November and December of 1973 and part of January of 1974. In January he was called back to Allison and told to report to the general maintenance department.

He returned to work with full benefits and received One Thousand Seven Hundred Sixty-five ($1,765.00) Dollars in back pay.

Apparently dissatisfied with the resolution of his grievance Brockman filed on April 13, 1974, a Complaint in the Marion Circuit Court alleging the accusation that he had sabotaged a piece of machinery was wilfully and maliciously published to other persons without privilege.

At the close of Brockman's case, Allison made a Motion for Judgment on the Evidence asserting that Brockman had failed to establish a prima facie case of defamation.

In granting Allison's motion, the court concluded that there was no unprivileged publication, no malice, and that the defamation was not slander per se and entered judgment on the evidence in favor of Allison.

Brockman appeals from that judgment.[1]

ISSUE

Simply stated the sole issue[2] is whether the trial judge erred in granting judgment on the evidence in favor of Allison at the close of Brockman's evidence.

PARTIES' CONTENTIONS — Brockman contends judgment on the evidence was improper because he produced some evidence on every element necessary to establish a case of defamation and that any limited privilege created was overcome by malice.

---

1. The trial judge based his decision on several theories, one of which was the lack of publication. He also found the communication in question to be privileged and that there was no showing of malice, and that there was no slander per se. Regardless of the reasons for the judge's decision, we are justified in affirming, for the judgment of the trial court must be affirmed if it is sustainable on any legal theory which the evidence supports. *Montgomery Ward & Co., Inc. v. Tackett* (1975), 163 Ind. App. 211, 323 N.E.2d 242; *Hunter v. Milhous* (1973), 159 Ind. App. 105, 305 N.E.2d 448; *Saloom v. Holder* (1973), 158 Ind. App. 177, 304 N.E.2d 217.

2. Our disposition of this case makes it unnecessary for us to determine whether the alleged defamation was per se or per quod. We point out, however, that Brockman has apparently misinterpreted the importance of the distinction. It is only relevant in the area of damages. A defamation per se is actionable without proof of special damages; whereas a defamation per quod is not actionable unless special damages are pleaded and proved. *See* 50 AM. JUR. *Libel and Slander* § 9 (1970).

Allison counters that Brockman produced no evidence that the defamatory statement was published to a third party, that the statement was at the very least qualifiedly privileged, that Brockman introduced no evidence of malice, and that this court should find the communication to be absolutely privileged in which case malice would be irrelevant.

## DECISION

CONCLUSION — The trial court did not err in granting judgment on the evidence in favor of Allison at the close of Brockman's evidence.

Defamation is not actionable unless there is a "publication." Without communication of defamatory matter to a third party, it is of no consequence whether the communication is actionable per se, privileged, or uttered with malice. Brockman fails to establish the requisite publication.

His only offering in support of a publication is the discussion of his discharge in the presence of Cummins at the grievance meeting on November 5.

Although there is some authority to the contrary,[3] the more persuasive authority holds that a publication to an agent of plaintiff who is acting at plaintiff's behest and on his behalf is tantamount to a publication to plaintiff himself, and as such does not fulfill the publication requirement.

In a remarkably similar situation[4] in *McDaniel v. Crescent Motors* (1947), 249 Ala. 330, 31 So.2d 343, the court found there was no publication of alleged slanderous remarks made by the defendant to a representative of plaintiff's union who was inquiring into the reasons for plaintiff's discharge. This was so even though the representative of the union was not shown to have special authority from the plaintiff as such but did occupy a position in the union making him the agent for all its members in such grievance matters. The rationale was stated to be:

3. *See* F. HARPER & F. JAMES, THE LAW OF TORTS § 5.15 (1956) and citations therein (hereinafter HARPER & JAMES).

4. There appear to be no Indiana cases directly in point.

Publication is essential to slander, and it must be in the presence of one or more other parties.

So that if the words were spoken only to the complaining party or to his agent, representing him in the matter discussed and invited by him, it is not such a publication as will support an action for slander. This includes one who is interceding for the employee as his authorized agent and representative. (citations omitted)

*McDaniel v. Crescent Motors, supra* at 332, 31 So.2d 344. *See also Beck v. Oden* (1941), 64 Ga.App. 407, 13 S.E.2d 468; *Taylor v. McDaniels* (1929), 139 Okla. 262, 281 P. 967; *Freeman v. Dayton Scale Co.* (1929), 159 Tenn. 413, 19 S.W.2d 255.

Likewise, in *Mims v. Metropolitan Life Ins. Co.* (5th Cir. 1952), 200 F.2d 800, the plaintiff, suspecting political motivation, asked a Senator to inquire into the reasons for his discharge. Defendant responded to the Senator that the discharge had been prompted by plaintiff's inefficiency and unsatisfactory production. In plaintiff's action for defamation (libel), the court found that plaintiff failed to establish publication to a third party:

Publication is essential to libel, and the publication must be made to one or more third parties.

. . .

[I]f the language complained of was uttered only to the complaining party or to his agent representing him in the matter discussed in the communication, it is not such a publication as will support an action for slander. *Mims v. Metropolitan Life Ins. Co., supra* at 801, 802.

Both parties acknowledge the union is the sole representative of its members in resolving employment disputes. So the conclusion is inescapable that there could be no publication of defamatory material in the meeting of November 5 in which the discharge of Brockman was discussed and at which Cummins was present, because Cummins was Brockman's union agent acting to resolve the very grievance filed by Brockman. No overt attack took place on the reputation of *another* at this meeting. *See* 53 C.J.S. *Libel & Slander* § 1 (1948).

Just as there can be no actionable defamation if there is no publication, one who consents to publication of what could constitute a defamatory statement is barred from recovery. HARPER & JAMES § 5.17. These two concepts are interrelated.

One who agrees to submit his conduct to investigation knowing that its results will be published consents to that publication. W. PROSSER, HANDBOOK OF THE LAW OF TORTS § 114 (4th ed. 1971) (hereinafter PROSSER).

The court in *Mims v. Metropolitan Life Ins. Co., supra* at 802, recognized the implied consent resulting from publication to the alter ego of the plaintiff:

> In making the inquiry . . . Senator Sparkman was acting at the express request of plaintiff and with his approval, — virtually as plaintiff's alter ego. Defendant's president replied to the person through whom the inquiry was thus made. The letter complained of having been solicited by plaintiff, through his representative Senator Sparkman, plaintiff thereby impliedly consented that defendant reply through the same representative. In contemplation of law it was a reply to the plaintiff himself. Without plaintiff's solicitation, the letter would not have been written.

*See also Patrick v. Thomas* (1962 Okla.), 376 P.2d 250; *Taylor v. McDaniels, supra.* Similarly, by filing his grievance, Brockman invited Allison to investigate the reasons for his discharge and discuss them with *his* union representatives pursuant to the established grievance settlement procedures. *Volenti non fit injuria* (that to which a person assents is not in law an injury).

We are aware consent is a bar to an action for defamation only if the defamatory statement is made within the scope of the consent. HARPER & JAMES § 5.17; PROSSER § 114. Here the consent extended to management and union officials who were necessarily involved in resolving the grievance which Brockman had instigated. Cummins was such a union official acting in his official capacity in attending the November 5 meeting — a meeting at which he had a right to be present although his presence was not required.

Thus, our specific holding is that there was no publication of the alleged defamation; and even had there been publication, Brockman consented thereto.

We go on to dispose of Brockman's insistence that while the circumstances surrounding the discussion of his discharge may have created a qualified privilege, he introduced evidence of malice which defeated the privilege.[5]

As previously indicated privilege and malice are irrelevant unless there is publication.[6] It is true that in the law of defamation the distinction between lack of publication and privilege is often blurred. What one court might consider a lack of publication, another may consider qualified privilege. Some cases seem to use privilege and publication synonymously.[7]

However that may be, the onus of proving malice is on the one who must overcome the defense of qualified privilege, 18 I.L.E. *Libel & Slander* § 101 (1958); and the malice must relate to the actual publication of the defamatory statement. Brockman recites page after page of examples of Allison's "malice" but they relate solely to the circumstances of his discharge not to the publication of the alleged defamatory statement. The trial court rightfully concluded he failed to carry his burden of proving malice.

Our holding also precludes us from embracing the unfettered holding of *General Motors Corp. v. Mendicki* (10th Cir. 1966), 367 F.2d 66, cited by Allison, that any discussion in the context of

---

5.  For a discussion of qualified privilege in the area of communication of the reasons for discharge to other employees or employees' union *see* Annot., 60 A.L.R.3d 1080 (1974).

6.  The question we are dealing with is one of publication and not that of a qualifiedly privileged communication, which loses its effect as privileged by malice. We do not reach the matter of privilege, malice or any other question until there is a publication. *McDaniel v. Crescent Motors, supra* at 333, 31 So.2d at 345.

Plaintiff asserts that the language of the letter was uttered with malice, thus destroying the qualified privilege which would otherwise attend it. But *we do not reach the matter of privilege or malice until publication has been established,* which here has not been done. (Emphasis supplied) *Mims v. Metropolitan Life Ins. Co., supra* at 802.

7.  For a discussion of this problem *see* Annot., 172 A.L.R. 208 (1948).

labor grievance and arbitration should be absolutely privileged even though false and malicious.[8]

Thus, we must inevitably conclude that the granting of the Motion for Judgment on the Evidence in favor of Allison at the close of Brockman's evidence was proper because of the absence of evidence or reasonable inference therefrom on at least one essential element of Brockman's case. *Myers v. Maris* (1975), 164 Ind. App. 34, 326 N.E.2d 577; *Mamula v. Ford Motor Co.* (1971), 150 Ind. App. 179, 275 N.E.2d 849. Brockman failed to introduce evidence of an unprivileged publication of false and reputation damaging material to a third person for which Allison was responsible. 53 C.J.S. *Libel & Slander* § 1 (1948).

---

8. It is our conclusion that statements made either by representatives of management or by representatives of an employee at a conference and bargaining session having for its purpose the adjustment of a grievance of the employee or other peaceable disposition of such grievance are unqualifiedly privileged.

The declared policy of the national legislation on labor relations is to encourage, facilitate and effectuate the settlement of issues between employers and employees through the "processes of conference and collective bargaining between employers and representatives of their employees," in order to promote and preserve industrial peace. (61 Stat. 152, 29 U.S.C.A. § 171.)

. . .

If the representatives of either employer or employee were subject to an action for damages because of statements made of what they claimed to be the pertinent facts respecting a controversy under consideration and of their position respecting such matter and the reasons therefor, at a conference or collective bargaining session being held to adjust such controversy, the likelihood of the attainment of peaceful adjustments or disposition of the issues involved between them through the conference or bargaining processes would be greatly decreased.

. . .

We think Congress intended that the respective representatives of employer and employee at such conferences and bargaining sessions should feel free to express their respective contentions as to the pertinent facts and the issues involved fully and frankly and to strongly support their positions with respect to the controversy, and — employing the words of Mr. Justice Fortas in his dissent in Linn — do so "untrammelled by fear of retribution for strong utterances." Otherwise, the chance for desirable fruitfulness from such conferences and bargaining sessions would be greatly lessened. Moreover, such actions for damages would create irritations between employer and employee, which would tend to impair the chance for a peaceful settlement of labor controversies between employer and employee in the future. *General Motors Corp. v. Mendicki, supra* at 70, 71.

The judgment of the trial court is affirmed.

Sullivan, P.J. and White, J. concur.

NOTE—Reported at 366 N.E.2d 1201.