EDWARD J. MALO *v.* ARNOLD C. GILMAN

[No. 3-876A199. Filed August 24, 1978.]

*George P. Roberts*, of South Bend, for appellant.

*Donald E. Wertheimer*, of South Bend, *Henry A. Hoover*, of South Bend, for appellee.

STATON, J. — Edward Malo, an architect, completed plans and specifications for Arnold Gilman, who sought to construct an office building. The construction bids received totaled $105,000, 50% more than the preliminary estimated cost of $70,000, which appeared in the contract between the men. Gilman was unable to secure financing and the building was never built. Malo brought an action to recover his fee as architect. Gilman counterclaimed for the $500 he had paid Malo. The trial court

found for defendant Gilman and granted his counterclaim. We affirm the judgment.

Malo agreed to provide architectural services to Gilman in the design and construction of an office building. Between May, 1967, and November, 1968, Malo expended considerable time and effort on the project. A verbal agreement was reached on July 28, 1967. Gilman was assured that costs of construction could be kept below $20.00 per square foot. After talking to prospective tenants, Gilman decided he required 3,500 square feet in the building. A standard American Institute of Architects (A.I.A.) form contract was signed on May 14, 1968.[1] Among the terms was the following:

"It is recognized that this written contract ratifies the similar verbal contract entered into July 28, 1967.

"The preliminary estimated cost of this project is Seventy Thousand Dollars, ($70,000.00)."

The contract also contained the following standard clause:

"3.4 Statements of Probable Construction Cost and Detailed Cost Estimates prepared by the Architect represent his best judgment as a design professional familiar with the construction industry. It is recognized, however, that neither the Architect nor the Owner has any control over the cost of labor, materials or equipment, over the contractors' methods of determining bid prices, or over competitive bidding or market conditions. Accordingly, the Architect cannot and does not guarantee that bids will not vary from any Statement of Probable Construction Cost or other cost estimate prepared by him."

Malo completed the plans and specifications for the project in September, 1968. In October, 1968, bids were solicited. The lowest total of bids received was approximately $128,000, which was negotiated down to $105,000. The bids were never accepted. Gilman indicated that the bids were unacceptable to him and that he was unable to secure financ-

---

1. Since the contract was prepared by Malo, it must be strictly construed against him and in favor of Gilman. *Oxford Development Corp. v. Rausauer Builders, Inc.* (1973), 158 Ind. App. 622, 304 N.E.2d 211.

ing. In mid-December, Gilman sold the land on which the building was to have been erected.

Malo demanded payment of his fee for architectural services in the sum of $9,132.60. Gilman refused to pay. Malo brought an action to collect his fee. Gilman counterclaimed for the $500 he previously had paid Malo. The trial court denied Malo's claim, but granted Gilman's counterclaim.

We hold that the judgment of the trial court can be affirmed on either of two alternate theories: (1) that parol evidence was properly admitted to show a maximum cost limitation of approximately $70,000.00, which was exceeded unreasonably by Malo's plans for construction; or (2) that the estimated cost figure appearing in the contract placed a reasonable limit on the actual cost of the project, which limit was exceeded unreasonably.[2] In either event, architect Malo breached the contract and is not entitled to compensation under the contract.

## I.

### Parol Evidence to Show a Maximum Cost Limitation

On appeal, Malo argues that no fixed price agreement appeared in the "fully integrated contract" for architectural services. The only figure appearing in the contract, $70,000.00, was merely a preliminary estimated cost figure which was not binding on the architect.[3] Further,

---

2. Appellee argued both of these theories in his brief in support of affirming the trial court's judgment. Even though the trial court admitted parol evidence concerning the existence of a maximum cost limitation, the judgment apparently was based on the second theory, that is, that the actual cost would have unreasonably exceeded the estimated cost figure appearing in the contract. See the memorandum by Judge Walton (which does not appear in the record but is included in appellee's brief, pp. 5-6). The written memorandum may *not* be considered as constituting special findings of fact, but may be considered only in order to determine the meaning and effect of the lower court's decision. *Smeekens v. Bertrand* (1969), 144 Ind.App. 656, 248 N.E.2d 48; *Merchants National Bank & Trust Co. v. Winston* (1959), 129 Ind.App. 588, 159 N.E.2d 296. Both parties in this appeal have referred to the memorandum.

Regardless of the language in the memorandum, any theory which is supported by the evidence may be considered by this Court in affirming the judgment. *Utica Mut. Ins. Co. v. Ueding* (1977), 175 Ind.App. 60, 370 N.E.2d 373; *Brockman v. Detroit Diesel Allison Div.* (1977), 174 Ind.App. 240, 366 N.E.2d 1201; *Montgomery Ward & Co., Inc. v. Tackett* (1975), 163 Ind.App. 211, 323 N.E.2d 242.

3. For a discussion of the legal issues raised by cost estimates, see: Sweet & Sweet,

even if the trial court properly allowed evidence of a $20 per square foot cost limitation, Malo claims his final design plans contained 5,400 square feet,[4] 50% more space than originally projected. In that case, the bids totaling $105,000 were in the right price range for a building costing $20 per square foot.

Gilman contends that evidence showing the existence of a $20 per square foot cost limitation (or $70,000 to $78,000 total for the project) was properly admitted, since the contract failed to contain a maximum cost limitation. Further, no significant changes in the project occurred to increase its size or cost.

Normally parol evidence may not be considered if it contradicts or supersedes matters intended to be covered by the written agreement. However, parol evidence may be admitted to supply an omission in the terms of the contract.[5] *Caldwell v. United Presbyterian Church* (Common Pleas 1961), 20 Ohio Ops. 2d 364, 88 Ohio L.Abs. 323, 180 N.E.2d 638; *Spitz v. Brickhouse* (1954), 3 Ill.App.2d 536, 123 N.E.2d 117. Many contracts for architectural services, as here, fail to include specific requirements such as the size, style, and character of the building, the number of rooms, the quality of the materials to be used, and, finally, the maximum cost. Yet, according to section 1.1.1 of the A.I.A. form contract,

"The Architect shall consult with the Owner to ascertain the requirements of the Project and shall confirm such requirements to the Owner."

Thus, depending on the specific needs of the owner, these requirements may be integral parts of the contract for architectural services. *Standley v. Egbert* (1970), D.C.App., 267 A.2d 365, 367. A contract that fails to

---

*Architectural Cost Predictions: A Legal and Institutional Analysis*, 56 CAL. L. REV. 996 (1968).

4. Of this space, less than 3,900 square feet was on the main floor, with the remaining square footage comprising a "partially finished" basement.

5. Using parol evidence to supply an omission will not modify the written agreement, but merely adds to it. This is consistent with Judge Walton's memorandum, in which he found that there was no modification of the written agreement which would take it outside the Statute of Frauds.

set out the details agreed upon, then, is not a complete and integrated statement of the agreement. *See Levy v. Leaseway System, Inc.* (1959), 190 Pa.Super. 482, 154 A.2d 314. Parol evidence may be considered to determine the agreement with respect to these matters. *See* Annot., 69 A.L.R.3d 1353 (1976).

Ordinarily, the maximum cost of a project is agreed upon prior to commencement of design. The owner who plans to construct a building has in mind a figure for the maximum cost of construction, particularly where, as here, he must secure outside financing. The architect must design the project, keeping in mind this maximum cost limitation. Evidence of the maximum cost limitation should be admissible where the contract fails to show that figure.[6] As noted in an annotation to the *Spitz* case, 49 A.L.R.2d 679, 680 (1956):

> "In the great majority of the cases where the question has been raised the evidence has been held admissible, usually on the ground that the written contract failed to disclose the parties' intention as to the cost of the structure contemplated, and that such contemplated cost was an element which must have entered into the negotiations."

Indiana has not yet decided a case on this point. However, the following cases allowed the introduction of parol evidence to show a maximum cost limitation when the contract failed to contain one: *Williams & Assoc., Arch. & Eng. v. Ramsey Prod. Corp.* (1973), 19 N.C.App. 1, 198 S.E.2d 67, *Caldwell v. United Presbyterian Church, supra; Petrus v. Bunnell* (1961), Fla. App., 129 So.2d 702; *Spitz v. Brickhouse, supra; Rosenthal v. Gauthier* (1953), 224 La. 341, 69 So.2d 367; and *Food Management, Inc. v. Blue Ribbon Beef Pack, Inc.*, 413 F.2d

---

6. A line of cases, among them *Wick v. Murphy* (1952), 237 Minn. 447, 54 N.W.2d 805, have admitted parol evidence to show the cost of the project agreed upon by the parties, based upon a different line of reasoning. As the courts interpret the contract, the fee for architectural services depends on the actual construction cost. Where no contract has ever been let, the terms of the contract become ambiguous, that is, the fee can not be determined based on actual construction cost. Parol evidence is admissible to resolve the ambiguity.

We note that the contract contains a diagram, with percentage plotted against cost of the project, to determine the architect's fees. The contract utilizes the line marked "Group B." We note that the 7.75%, which is marked on the graph, corresponds to a cost figure of $70,000. This is clearly the figure intended to be used to calculate Malo's fee.

716, 726 (8th Cir. 1969), which cited as a general rule "that an oral cost limitation imposed upon an architectural or engineering design, where not contradictory to the express terms of the written contract, may be admitted into evidence. . . ."

We agree that parol evidence of a maximum cost limitation may be introduced where the contract fails to contain such a limitation. The question of fact, whether architect Malo agreed to design a building, the cost of which could not exceed $20 per square foot (or $78,000 for 3,900 square feet), was resolved by the trial court in favor of Gilman. On examining the record, we cannot say that the finding of fact was incorrect as a matter of law.

Gilman testified that, from the beginning, he received repeated assurances that Malo would have "no problem" designing a building costing less than $20 per square foot. The amount of usable space Gilman required was approximately 3,500 square feet. By multiplying the figures, Gilman and Malo arrived at $70,000 as a "firm figure" for maximum cost. Gilman sought to reduce costs, accepting the use of a cost-saving "Uni-Roof" design, and suggesting a cost-cutting relocation of the basement.

Malo testified that he was aware that Gilman was interested in "getting the best price on the market." Yet he claimed that there was no ceiling on the cost of the project, that "it could be as much as a million dollars." Other evidence presented concerning the cost of the project included two bids received on the basis of Malo's preliminary drawings; one was $80,000; the other (which would incorporate the Uni-Roof) was $62,000 to $70,000. Finally, one of plaintiff's witnesses, who was present at a meeting where the bids were tabulated, testified that no specific "cost talk" was discussed, that he did not recall the figure of $70,000, but that $80,000 kept "ringing a bell."

The evidence fails to show that Gilman would have paid *any* sum of money to construct the proposed building. On the contrary, the evidence clearly shows that he wished to construct the building as cheaply as possible. The trial court correctly resolved the factual question of a maximum cost limitation in favor of Gilman. Under the terms of the agreement, then, Malo lost his right to recover compensation when he design-

ed a building impossible of construction within the maximum cost limitation.

## II.

### Estimated Cost Figure Exceeded Unreasonably

The contract for architectural services contained an estimated cost figure of $70,000. After negotiation, the lowest construction bids totaled $105,000, a figure 50% higher. Appellee Gilman argues that so great a discrepancy should bar Malo from receiving his fee for architectural services.

The court in *Caldwell v. United Presbyterian Church, supra,* supported such a theory. In that case, the building would have cost at least $57,800 to build, or $12,800 (almost 30%) in excess of the $45,000 cost limitation on the project. The court concluded,

"that plaintiff has not substantially complied with the terms of his written contract and, therefore, is not entitled to recover in this action. . . ."

*Id.* at 642.

Citing many cases, a federal Court of Appeals decision declared as a general rule

"that there may be no recovery for engineering or architectural services where the actual cost of the structure substantially or unreasonably exceeds the estimated cost limitation, unless the cost excess is attributable to the owner's action. . . ."

*Food Management, Inc. v. Blue Ribbon Beef Pack, Inc., supra,* 413 F.2d at 726.

More recently, *Durand Associates, Inc. v. Guardian Investment Co.,* (1971), 186 Neb. 349, 183 N.W.2d 246, involved construction bids which exceeded the estimate by 55%. The court interpreted the section of the contract in which the architect explicitly refused to guarantee the cost estimate, declaring that the figure represented a "reasonable approximation of the cost of the project." *Id.* at 250. This did *not* mean that an architect would never be bound by his estimate. Such a situation would be "contrary to public policy because it would mean that no matter how large the bid for doing the

work, defendants would be obligated to pay an architectural fee based on that amount. . . ."[7] *Id.* The court held,

"that an architect or engineer may breach his contract for architectural services by underestimating the construction costs of a proposed structure. The rule to be applied is that the cost of construction must reasonably approach that stated in the estimate unless the owner orders changes which increase the cost of construction. . . ."

*Id.* at 251.

### III.

### Conclusion

Under either theory, the trial court could have found that Malo breached his contract for architectural services and denied Malo compensation under the contract, and found that Gilman was entitled to recover the $500 he paid Malo under the contract. The judgment of the trial court is affirmed.

Buchanan, C.J., (by designation), concurs;

Hoffman, J., concurs in Part II only.

NOTE—Reported at 379 N.E.2d 554.