**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Mar 05 2013, 8:30 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**STEPHEN P. ROTHBERG**
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEES:

**MICHAEL H. MICHMERHUIZEN**
Fort Wayne, Indiana

**DANIEL M. GRALY**
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

IN RE: THE MARRIAGE OF:                    )
                                           )
JEROME KLEBER,                             )
                                           )
    Appellant-Petitioner,                )
                                           )
      vs.                              )   No.  02A03-1207-DR-321
                                           )
CARLA (KLEBER) BUTORAC,                    )
                                           )
    Appellee-Respondent,                 )
                                           )
    and                                  )
                                           )
ASHLYN P.A. KLEBER,                        )
                                           )
    Intevenor.                           )

APPEAL FROM THE ALLEN CIRCUIT COURT
The Honorable Frederick A. Schurger, Special Judge
Cause No. 02C01-9312-DR-1499

**March 5, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Chief Judge**

Case Summary and Issues

Jerome Kleber ("Father") appeals from the trial court's order to pay Carla (Kleber)

Butorac ("Mother") for college expenses of their children as well as attorney's fees. Father

raises multiple issues, but we find the following restated issues dispositive: 1) whether

Father had a binding obligation to contribute to the college education of his children; 2)

whether the trial court properly considered parole evidence to determine the amount of that

obligation; and 3) whether the trial court abused its discretion in awarding Mother attorney's

fees. Concluding that there was a binding agreement, that the trial court properly considered

parole evidence, and that the trial court did not abuse its discretion in awarding attorney's

fees, we affirm.

Facts and Procedural History

Father and Mother dissolved their marriage in 1994, and the trial court approved the

parties' Marital Settlement Agreement, Mediated Parenting Agreement of the Parties, and

Mediated Agreement of the Parties Relating to Child Support and Other Child Support

Related Matters. Paragraph 4.2 of the Mediated Parenting Agreement provides:

> The parties have committed to provide for their children post-high school
> higher educations contemplated to be four (4) year undergraduate educations

2

commensurate with the aptitudes and abilities of each of their children, and subject to the financial abilities of the parties to provide said education.

Appellant's Appendix at 71. The parties have four children: Ashlyn, born in 1985; Jonathan, born in 1987; Kathryn, born in 1989; and Sarah, born in 1992. Each of the four children has attended or is attending college. Ashlyn graduated from Savannah College of Art and Design in May of 2008, Jonathan from Indiana University in May of 2010, Kathryn from Purdue University in May of 2012, and Sarah began attending Indiana University in 2011.

It is undisputed that before Ashlyn began attending college, Father orally agreed with Mother to contribute approximately one-third of the cost of tuition at an in-state public university towards Ashlyn's tuition. Additionally, the trial court concluded that Father made the same commitment in writing. In her first two years of college, in 2004 and 2005, Father paid approximately $5,500 and $5,000, respectively, towards Ashlyn's tuition. After her first two years, however, Father stopped contributing to Ashlyn's college education.

In 2009, Mother filed a Verified Information and Citation for Contempt and Rule to Show Cause. Father then filed a Verified Petition to Modify Child Support, and Mother responded by filing a Petition to Enforce Parties' Educational Support Agreement/Alternative Verified Petition for Education Support Order. After an evidentiary hearing, the trial court made the following findings of fact: Ashlyn included both of her parents in her college choice decision; Father agreed that Savannah College was a good choice and even helped Ashlyn move in and set up her dorm room; Father admitted that paragraph 4.2 of the parties' Mediated Agreement was more than just a moral obligation to contribute to his children's college expenses; prior to Ashlyn beginning college, the parties exchanged communications

3

indicating their intent that each parent would pay one-third of Ashlyn's educational expenses;[1] Father acknowledged in one letter that his one-third share would amount to somewhere between $5,000 and $6,000; Father admitted that Ashlyn's attendance at college was not a year-to-year decision, but rather, a one-time decision to attend a university for four years; Father paid approximately $5,500 towards Ashlyn's expenses during her freshman year and $5,000 during her sophomore year; Mother paid all of her required educational contributions and at times contributed more than she was obligated; Ashlyn contacted Father prior to her junior year to determine how much he would pay; two weeks after Ashlyn began her junior year, Father returned her communication and told her that although he was able to contribute, he chose not to; the reason Father decided to no longer contribute to Ashlyn's college expenses is that Ashlyn informed him that she only wished to have a relationship with him and not his wife; Ashlyn and Mother obtained additional student loans during her junior and senior years to make up for the money Father no longer provided; although Father initially claimed he did not pay because he did not have the means to do so, during Ashlyn's junior year he paid $5,000 toward the education of a different child, he had 401(k) money available to him that exceeded his share of Ashlyn's expenses, and he had access to a line of credit and various credit cards which he subsequently used to pay other children's educational expenses; in 2006 and 2007 Father's income was almost $79,000, and in 2008 it was almost $81,000; in 2006 Father spent approximately $3,000 at The Guitar Center and in

---

[1] The agreement that each parent would pay one-third of Ashlyn's college expenses was limited by such fraction being based on an in-state, state-supported college or university. With Savannah College costing approximately $42,000 per year, the portions Father and Mother were responsible for were actually considerably less than one-third of the overall cost. Ashlyn bore the difference in cost.

2008 he spent $1,498 on jewelry and approximately $6,000 on a vacation; and in later years

Father also failed to pay a total of approximately $50,000 for the other children's educational

expenses. The trial court concluded, in part:

> 57. That paragraph 4.2 of the parties' [Mediated Parenting Agreement] created a legally binding obligation on each party to contribute for four years towards each of their children's undergraduate educations. The parties through their communications and their history of payment for the children's college expenses established that each parent was to contribute one-third (1/3) of each child's college educational expenses based on an in-state, state supported college. Father breached this obligation in failing to make contribution to Ashlyn's junior and senior year at Savannah College.

Appellant's App. at 40-41.[2]

The trial court ordered Father to pay Mother $36,065 for the various college costs for

their four children, but reduced the amount to $29,333 due to a retroactive reduction in

Father's child support obligation. The trial court also ordered Father to pay Mother's

attorney's fees in the amount of $25,108.78. Father now appeals.

Discussion and Decision[3]

I.    Agreement

A. Standard of Review

Settlement agreements become binding contracts when they are incorporated into a

dissolution decree. Bailey v. Mann, 895 N.E.2d 1215, 1217 (Ind. 2008). Thus, they are

interpreted according to the general rules of contract construction and present a question of

law, which we review de novo. Id. Unless the terms of an agreement are ambiguous, we

---

[2] The trial court also found that the elements of promissory estoppel were satisfied. Because we affirm the trial court order on the basis that there was a legally binding agreement, we need not address the promissory estoppel issue or Father's argument that this was an improper retroactive modification of a child support order.

give them their plain and ordinary meaning. Id. However, if the language of a contract is ambiguous, extrinsic evidence may be considered. Bernel v. Bernel, 930 N.E.2d 673, 682 (Ind. Ct. App. 2010), trans. denied. Parole evidence may also be admitted to supply an omission in the terms of the contract. Malo v. Gilman, 177 Ind. App. 365, 379 N.E.2d 554, 557 (1978). Our paramount goal in interpreting a contract is to ascertain and effectuate the intent of the parties. Bernel, 930 N.E.2d at 682.

## B. Enforceability of Agreement

To be valid and enforceable, a contract must be reasonably definite and certain in the terms and conditions of the promises made, including by whom and to whom. Conwell v. Gray Loon Outdoor Mktg. Grp., Inc., 906 N.E.2d 805, 813 (Ind. 2009). Absolute certainty in all terms is not required. Id. Rather, a contract must be reasonably definite so that the intention of the parties may be ascertained, and so that it provides a basis for determining the existence of a breach and the appropriate remedy. Wenning v. Calhoun, 827 N.E.2d 627, 629 (Ind. Ct. App. 2005), trans. denied.

Father argues that the provision at issue here lacks the essential terms necessary to make it a binding contract. More specifically, he argues that it was simply an agreement to agree or an aspirational provision because it included the conditional phrase "subject to the financial abilities of the parties" and did not state an exact amount or percentage of college expenses that Father was obligated to pay.

The phrase "subject to the financial abilities of the parties" does not render the agreement between the parties an agreement to agree. The provision was not simply an

---

[3] Oral argument was held on the matter in Indianapolis on February 7, 2013.

agreement that the parties would enter into an agreement in the future regarding who would pay their children's college expenses. Also, there was no indication that a future writing or agreement would be necessary before the commitment to provide for their children's college expenses would take effect. And even if a future agreement was contemplated, this does not render a contract unenforceable in and of itself. Our supreme court has held that whether an agreement that obligates the parties to execute a subsequent final written agreement is a binding contract or merely an agreement to agree turns on two issues: intent to be bound and definiteness of terms. Wolvos v. Meyer, 668 N.E.2d 671, 675 (Ind. 1996).

Here, the intent of the parties is clear. The agreement states that the parties "have committed" to provide for their children's post-high school higher education.[4] Appellant's App. at 71. This clearly indicates that the parties intended to contribute to their children's college education. With regard to the definiteness of terms, short of the actual amount to be contributed, the agreement states that both parents will contribute to a four year college education for their children depending on the children's abilities and as long as they have the financial ability to do so.[5] There is no dispute that the parties have the financial ability to contribute or that the children have the aptitude to attend a four year college institution. This

---

[4] Father argues in his reply brief that the phrase "have committed" simply means that the parties had an opinion or a general intent and does not create a binding obligation. Assuming that the provision was a statement of general intent to pay for their children's college education, placing it in a written agreement signed by both parties and approved by the court makes it binding. Father admitted that the agreement was more than just a moral obligation to contribute to his children's college expenses and he did in fact contribute to their education for some time.

[5] Father also pointed to the terms "contemplated" and "aptitudes and abilities" during oral argument as uncertain terms, but again, reading the provision as a whole indicates that the parties intended to be bound to pay for a four year college education for their children as long as they had the financial ability to do so.

is unlike the National Tea Co. v. Weiss case relied upon by Father where a lease was signed subject to a list of further conditions, but the conditions were never approved by the other party. 341 F.2d 331, 332 (7th Cir. 1965). Here, not only was the condition—that the parties have the financial ability—approved by both parties when they signed the agreement, but it was also satisfied because the evidence shows that both parties did indeed have the financial ability to pay college expenses. Generally, "[w]hen a court finds a contract to be clear in its terms and the intention of the parties apparent, the court will require the parties to perform consistently with the bargain they made." First Fed. Sav. Bank of Indiana v. Key Mkts., Inc., 559 N.E.2d 600, 604 (Ind. 1990). Here, the contract is clear and the intention of the parties is apparent, and therefore Father must perform consistently with what he bargained for.

Similarly, the fact that the actual amount or percentage to be contributed by each of the parties towards their children's college expenses is not specified in the agreement does not render it unenforceable. Absolute certainty in all terms in not required. Conwell, 906 N.E.2d at 813. Courts have often enforced contracts that have one or more of the terms missing, as long as all of the essential terms are part of the writing. See, e.g., Block v. Magura, 949 N.E.2d 1261, 1266 (Ind. Ct. App. 2011); Johnson v. Sprague, 614 N.E.2d 585, 589 (Ind. Ct. App. 1993); Malo, 379 N.E.2d at 558.[6] Here, the agreement clearly stated that both Father and Mother would contribute to a four year college education for each of their four children and included both the signatures of Father and Mother. This is unlike the

---

[6] Depending on the type of contract, in order to supply the missing term, courts may resort to parole evidence, Malo, 379 N.E.2d at 558, consider usage of trade or course of dealing, Allen v. Clarian Health Partners, Inc., 980 N.E.2d 306, 309-10 (Ind. 2012), or look to the law, Johnson, 614 N.E.2d at 589.

Zukerman v. Montgomery case relied upon by Father where it was unclear by whom the promise was made and to whom.[7] 945 N.E.2d 813, 820-21 (Ind. Ct. App. 2011) (unclear who owned the properties that were to be relinquished and whether those who signed the agreement did so in their individual or representative capacities). We hold that the essential terms were included in the agreement and it is, therefore, enforceable.

## C. Parole Evidence

Father also argues that the contract, despite missing essential terms in his opinion, is actually unambiguous and that it was therefore improper for the trial court to consider parole evidence. Specifically, the trial court relied upon the parties' communications and history of payment of college expenses. While courts often look at parole evidence to help construe an ambiguous contract, courts have also looked at parole evidence in the case of a missing term in a contract. See Malo, 379 N.E.2d at 558 (maximum cost limitation not included in agreement but determined based on parole evidence); see also Majd Pour v. Basic Am. Med., Inc., 512 N.E.2d 435, 439 (Ind. Ct. App. 1987) ("A contract will be held parol where oral testimony is required to establish the existence of the obligation itself, but not where oral testimony is merely required to establish the particular details of the obligation."). It was,

---

[7] Father also points to the provisions in Borth v. Borth, 806 N.E.2d 866, 868 (Ind. Ct. App. 2004), and Hay v. Hay, 730 N.E.2d 787, 790 (Ind. Ct. App. 2000), as more definite than the provision at issue here. However, in both cases, the issue was not whether the agreement was enforceable but whether the trial court properly modified an original court order, and, thus, those cases are not on point. Mother points to Martin v. Martin, 495 N.E.2d 523, 524 (Ind. 1986), and Frazier v. Frazier, 737 N.E.2d 1220, 1226 (Ind. Ct. App. 2000), but those cases both dealt with the interpretation of a trial court order so they similarly lack relevancy.

Father also analogizes this case to a North Carolina case, Rosen v. Rosen, 413 S.E.2d 6 (N.C. Ct. App. 1992). However, it is not clear from that case alone whether North Carolina law is similar to Indiana law in not requiring absolute certainty in all terms of a contract. See id. at 7 ("If any portion of the proposed terms is not settled, there is no agreement.") (emphasis in original).

therefore, proper for the trial court to consider parole evidence to establish the fraction of the college costs Father was responsible for. The evidence shows that prior to their children starting college, the parties agreed that each parent was to contribute one-third of each child's college educational expenses based on the cost of an in-state, state-supported college. The evidence also shows that Father in fact made such payments for a period, but did not continue to do so for the entirety of his children's time attending college. The trial court properly considered parole evidence to supplement the missing term of how much Father was obligated to contribute towards his children's college education.

## II. Attorney's Fees

Father also argues that this court should reverse the trial court's order of attorney's fees, because "the trial court's rulings on [the substantive] issues should be reversed." Brief for Appellant at 23. However, we have affirmed the trial court on the substantive issues. In addition, we review an award of attorney's fees for an abuse of discretion:

> In post-dissolution proceedings, the trial court may order a party to pay a reasonable amount for attorney's fees. The trial court has broad discretion in awarding attorney's fees. Reversal is proper only where the trial court's award is clearly against the logic and effect of the facts and circumstances before the court. In assessing attorney's fees, the trial court may consider such factors as the resources of the parties, the relative earning ability of the parties, and other factors bearing on the reasonableness of the award. In addition, any misconduct on the part of a party that directly results in the other party incurring additional fees may be taken into consideration.

Julie C. v. Andrew C., 924 N.E.2d 1249, 1261 (Ind. Ct. App. 2010) (citations omitted). Taking some of these factors into account, not only did Mother prevail on the substantive issues, but the court also found that Father's financial situation was better than her financial

10

situation, that Father did not respond to discovery in good faith, and that Father was not billed for legal services because he was the officer manager of the law firm representing him at the trial level. For these reasons, we conclude that the trial court did not abuse its discretion in awarding Mother attorney's fees.[8]

## Conclusion

Concluding that there was a binding agreement in which Father was obligated to contribute to his children's college education, that the trial court properly considered parole evidence, and that the trial court did not abuse its discretion in its award for attorney's fees, we affirm the trial court's order.

Affirmed.

MAY, J., and PYLE, J., concur.

---

[8] In addition to requesting that we affirm the trial court's order for attorney's fees, Mother includes in her brief a request that this court remand the matter for an award of appellate attorney's fees. Mother does not state why this court should grant her request nor does she cite any authority to support it. We deny the request.

11