**Ronald WEDGE, Appellant–Plaintiff,**

v.

**LIPPS INDUSTRIES, INC., d/b/a Conversions by Wedge, Frank P. Lipps, and Randall Lipps, Appellees–Defendants.**

**No. 20A03–8910–CV–436.**

Court of Appeals of Indiana,
Third District.

July 25, 1991.

Robert J. Palmer, E. Spencer Walton, Jr., May, Oberfell & Lorber, South Bend, Anthony J. Iemma, Elkhart, for appellant-plaintiff.

Michael A. Cosentino, Slabaugh Cosentino Arko Walker & Shewmaker, Elkhart, Evan E. Steger, Kathleen K. Shortridge, Ice Miller Donadio & Ryan, Indianapolis, for appellees-defendants.

HOFFMAN, Judge.

Appellant-plaintiff Ronald Wedge appeals a trial court judgment ordering him to remit $340,833.33 of a $647,500.00 jury verdict or suffer a new trial. Appellees-defendants Lipps Industries, Inc., Frank Lipps, and Randall Lipps cross-appeal for a new trial to the bench on all issues.

The facts relevant to the appeal disclose that Wedge started his own van conversion business in 1975. The business was profitable until 1979 when the gasoline shortages occurred. In 1980, Wedge's secretary informed Wedge that Randy Lipps was interested in entering the van conversion business. Wedge met with Randy in July of 1980, and Randy told Wedge that his father, Frank Lipps, could provide operating capital for the business. Due to the extensive debt, the parties agreed to close Wedge's business and start a new one, Lipps Industries, Inc., d/b/a Conversions by Wedge.

Frank put up $100,000.00 to pay off the debts of the old business and provide operating capital for the new business. He also purchased the property upon which the business stood. Although an agreement was never formalized in writing, Wedge believed he and Randy were 50% owners of the business and Frank was merely a creditor. The business paid interest to Frank on his $100,000.00 loan; however, in the summer of 1982, Frank told his bookkeeper to record $30,000.00 of the loan as corporate stock. Wedge never agreed to make Frank a co-owner, but when the business began to show a profit, the money was split three ways between Wedge, Randy, and Frank.

On December 14, 1982, Frank called a meeting at his attorney's office and terminated Wedge's employment with the business. Wedge filed a complaint against Frank, Randy, and Lipps Industries (collectively, "Lipps") on March 3, 1983. The complaint stated claims for breach of contract, punitive damages, breach of implied covenant of good faith and fair dealing, promissory estoppel, misrepresentation, and conspiracy, and requested an accounting and a trust. Jury trial commenced on October 13, 1987, and on October 28, 1987, the jury returned a verdict in favor of Wedge finding that he was a 50% owner of the business with an interest valued at $647,500.00. The trial court entered final judgment on the verdict on September 12, 1989, and on September 28, 1989, Lipps filed a motion to correct error. On December 18, 1989, the court granted the motion to correct error and ordered Wedge to remit $340,833.33 of the jury verdict or suffer a new trial. This appeal and cross-appeal ensued.

Wedge raises five issues for review on appeal:

(1) whether the trial court's order granting either remittitur or a new trial failed to comply with Ind.Trial Rule 59(J)(7);

(2) whether the trial court erred in ruling that Wedge's claim for damages was limited to his share of the value of the business at the time of his discharge;

(3) whether the trial court erred in failing to award prejudgment interest on Wedge's award of compensatory damages;

(4) whether the trial court erred in awarding post-judgment interest at the rate of 8% per annum; and

(5) whether the trial court erred in not submitting the issue of punitive damages to the jury.

Wedge first contends the trial court's order granting either remittitur or a new trial failed to comply with Ind.Trial Rule 59(J)(7). T.R. 59(J)(7) provides as follows:

"In reviewing the evidence, the court shall grant a new trial if it determines that the verdict of a non-advisory jury is against the weight of the evidence; and shall enter judgment, subject to the provisions herein, if the court determines that the verdict of a non-advisory jury is clearly erroneous as contrary to or not supported by the evidence, or if the court determines that the findings and judgment upon issues tried without a jury or with an advisory jury are against the weight of the evidence.

In its order correcting error the court shall direct final judgment to be entered or shall correct the error without a new trial unless such relief is shown to be impracticable or unfair to any of the parties or is otherwise improper; and if a new trial is required it shall be limited only to those parties and issues affected by the error unless such relief is shown to be impracticable or unfair. If corrective relief is granted, the court shall specify the general reasons therefor. When a new trial is granted because the verdict, findings or judgment do not accord with the evidence, the court shall make special findings of fact upon each material issue or element of the claim or defense upon which a new trial is granted. Such finding shall indicate whether the decision is against the weight of the evidence or whether it is clearly erroneous as contrary to or not supported by the evidence; if the decision is found to be against the weight of the evidence, the findings shall relate the supporting and opposing evidence to each issue upon which a new trial is granted; if the decision is found to be clearly erroneous as contrary to or not supported by the evidence, the findings shall show why judgment was not entered upon the evidence."

In *Borowski v. Rupert* (1972), 152 Ind.App. 9, 281 N.E.2d 502, this Court interpreted the latter paragraph as setting forth two courses of action by the trial court: (1) an order correcting the error without a new trial, and (2) an order for a new trial. *Id.* at 20, 281 N.E.2d at 509. Here, the trial court granted relief under T.R. 59(J)(5) which reads:

"In the case of excessive or inadequate damages, [the court shall] enter final judgment on the evidence for the amount of the proper damages, grant a new trial, or grant a new trial subject to additur or remittitur[.]"

The trial court granted a new trial subject to remittitur; therefore, the court is committed to the second course of action. *Borowski* at 21, 281 N.E.2d at 510.

As the *Borowski* court noted, the second course of action requires the trial court to enter special findings of fact as to: (a) whether the decision is against the weight of the evidence; (b) whether the decision is clearly erroneous as contrary to the evidence; or (c) whether the decision is not supported by the evidence. *Id.* at 21, 281 N.E.2d at 509. The instant court made no such findings, however. Although Lipps argue that, if this Court finds the trial court's order insufficient, it should remand for special findings of fact, our Supreme Court held otherwise in *State v. White* (1985), Ind., 474 N.E.2d 995, 1000:

"When we consider the rarity with which a trial court exercises its thirteenth juror prerogative, the clear mandate of Trial

Rule 59(J)(7), the relative ease with which the correctness of the finding can be demonstrated if, in fact, the verdict was against the weight of the evidence, the presumption of validity accorded to the decisions of the trial courts, and the difficulty, if not impossibility, of an appellant's task to present a "focused argument" in its brief, absent the court's compliance with the mandate, and the unconscionable delay thrust upon him by remand and subsequent appellate review, it is clear to us that an appellee, under such circumstances, is not entitled to such consideration. Certainly, under such circumstances, one should not be allowed to retain the benefits of the trial court order without a thorough review and understanding of the evidence upon which it was based; and, although we would not foreclose a court of review from independently searching the record for that purpose, to do so would be an act of great lenity and questionable wisdom.

It may be regarded as harsh treatment to deny the appellee the benefit of the ruling won at the trial level when a remand might preserve it. However, we are of the opinion that if the court overrides the jury in its special domain and substitutes its verdict for theirs without a clear showing that the ends of justice required it, it is likely that they did not."

*See also Blay v. Vogel* (1989), Ind.App., 533 N.E.2d 172, 176.

■ A trial court cannot properly vary a jury's award and enter judgment for a different amount unless it finds, as a matter of law, that the damages awarded were excessive or inadequate. *Smith v. Syd's, Inc.* (1991), Ind.App., 570 N.E.2d 126, 129. According to the evidence presented at trial, the value of the business ranged from $1,673,000.00 to $250,000.00, and Wedge's interest in the business was one-half, one-third, or zero. The jury's award ($647,500.00) fell within the scope of the evidence; therefore, the award was not excessive as a matter of law, and the trial court erred in granting remittitur.

*See State v. Bircher* (1983), Ind.App., 446 N.E.2d 607, 610–611;

*Weenig v. Wood* (1976), 169 Ind.App. 413, 451, 349 N.E.2d 235, 257.

Moreover, as the *White* court noted, "although a strong presumption of validity is generally accorded to the trial court's ruling, it may not overturn a jury verdict by a naked statement that it is erroneous." *Id.* at 1000. Like the *White* court, this Court declines to search the record in an effort to sustain the trial court's decision, and we remand with instructions to reinstate judgment on the original jury verdict.

■ Next, Wedge argues that the trial court erred in ruling that his claim for damages was limited to his share of the value of the business at the time of his discharge. Specifically, he argues that, as a 50% owner of the business, he was entitled to 50% of the profits and benefits of the business from the time of his discharge until the time of trial. However, as Wedge himself notes, the essential character of his claim was breach of contract, and he requested only monetary damages. The jury awarded damages to Wedge for his interest in the business at the time of his discharge, and as Wedge was not suing to be reinstated as an owner of the business, the time of his discharge was the time his interest in the business terminated. Consequently, Wedge was not entitled to any post-breach profits or benefits, and the trial court did not err in its ruling.

■ Wedge further alleges that the trial court erred in failing to award prejudgment interest on his award of compensatory damages. The award of prejudgment interest is founded solely upon the theory that there has been a deprivation of the plaintiff's use of money or its equivalent and that unless interest is added, the plaintiff cannot be fully compensated for the loss suffered. *Indiana Ins. Co. v. Sentry Ins. Co.* (1982), Ind.App., 437 N.E.2d 1381, 1391. Prejudgment interest is recoverable not as interest but as additional damages to accomplish full compensation. *Id.* The crucial factor in determining whether prejudgment interest is proper is whether the damages were ascertainable in accordance with fixed rules of evidence

and accepted standards of valuation at the time the damages accrued. *Courtesy Enterprises, Inc. v. Richards Labs* (1983), Ind.App., 457 N.E.2d 572, 580. Where, as here, the claim is based upon a contract, prejudgment interest is proper if the terms of the contract make the claim ascertainable and the amount of the claim rests upon "mere computation." *Id.*

■ The instant case did not involve a written contract; therefore, there are no terms to make the claim ascertainable. Moreover, due to the conflicting evidence regarding the value of the business, the amount of the claim did not rest upon "mere computation." *See Fort Wayne Nat. Bank v. Scher* (1981), Ind.App., 419 N.E.2d 1308, 1311 (in some cases, conflicting evidence may require the fact-finder to determine whether or not the prerequisites to recovery have been met). The trial court did not err in failing to award prejudgment interest.

■ Appellant also claims the trial court erred in awarding post-judgment interest at the rate of 8% per annum. At the time the jury verdict was returned, IND.CODE 24–4.6–1–101 (1982 Ed.) provided in pertinent part:

"Interest on judgments for money whenever rendered shall be from the date of the return of the verdict or finding of the court until satisfaction at: ... (2) an annual rate of twelve percent (12%) if there was no contract by the parties."

The statute was subsequently amended to reduce the rate of interest to 10%; however, the reduction did not take effect until after June 30, 1988. Therefore, in accordance with the statute, Wedge is entitled to interest at the rate of 12% per annum from October 28, 1987, the date of the jury verdict, to June 30, 1988, and at the rate of 10% per annum from July 1, 1988, until satisfaction.

■ Lastly, Wedge maintains the trial court erred in not submitting the issue of punitive damages to the jury. Prior to trial and at the request of Lipps, the court bifur-

cated the punitive damages issue and refused to allow any evidence regarding punitive damages during the liability phase of the trial. However, while the jury was deliberating on the liability issue, the court granted Lipps' motion for judgment on the evidence on the issue of punitive damages. Upon review, this Court will adhere to the standard that judgment on the evidence is proper only where there is a total lack of evidence on some essential element of the claim or where the evidence is without conflict and susceptible only to an inference in favor of the moving party. *Dahlin v. Amoco Oil Corp.* (1991), Ind.App., 567 N.E.2d 806, 810. Because the trial court refused to admit any evidence specifically directed to the issue of punitive damages, its grant of judgment on the evidence was premature and, thus, constitutes reversible error.

Lipps raise four issues for review on cross-appeal:

(1) whether the trial court erred in submitting the breach of contract claim to the jury;

(2) whether the verdict form fails to support a breach of contract claim;

(3) whether the case was properly tried to a jury; and

(4) whether the evidence was sufficient to establish the value of Wedge's interest in the business or the existence of an oral contract.

■ With respect to the first issue, Lipps claim the "rampant confusion between contract and equitable claims muddled [the] proceedings" to such an extent that only a new trial to the bench could cure the problem. As previously discussed, Wedge's claim was essentially legal (breach of contract) and, with one exception,[1] Wedge requested only monetary damages. "Where compensation in money will afford complete and sufficient relief, as where a money judgment is the ultimate relief sought, the remedy at law is usually adequate for that purpose." 12 I.L.E. *Equity* § 6, p. 275. Furthermore, considering that Lipps failed to challenge Wedge's jury de-

---

**1.** The exception was merely a request in count eight of the complaint that the court order an accounting and impose a trust on the business pending the outcome of the litigation.

mand for over two years and moved to bifurcate the equitable issues (as well as the punitive damages issue), they created the "confusion" of which they now complain. *See Motor Express Inc. v. Chase* (1963), 135 Ind.App. 544, 193 N.E.2d 78 ("Appellant will not be heard to complain of an adverse verdict and judgment founded upon confusion and error which appellant, itself, created."). The trial court did not err in submitting the breach of contract claim to the jury.

◼ Next, Lipps argue that the verdict form fails to support a breach of contract claim. However, Lipps neither objected to the verdict form nor tendered alternative verdict forms. Their failure to do so constitutes waiver of the issue for appellate review. *Farm Bureau Ins. Co. v. Crabtree* (1984), Ind.App., 467 N.E.2d 1220, 1226.

◼ In order to circumvent a waiver finding, Lipps cite *Wolff v. Slusher* (1974), 161 Ind.App. 182, 314 N.E.2d 758, for the proposition that waiver does not apply where the jury returns a confusing and improper verdict. *Id.* at 190–191, 314 N.E.2d at 763. The instant court specifically instructed the jury that if it found an oral contract and a breach which caused damages, it should return a verdict for appellant and value the business as of December 14, 1982, the date of Wedge's discharge. Although the verdict form did not specify the date of valuation, the jury clearly followed the court's instructions and valued the business as of the December date. Furthermore, neither party questioned the valuation date at the time of trial, and a party may not raise an issue for the first time on appeal. *W & W Equipment Co., Inc. v. Mink* (1991), Ind.App., 568 N.E.2d 564, 576. The verdict form supported a breach of contract claim.

Lipps further maintain the judgment was based on an equitable claim and should never have been tried to a jury. As previously discussed, the essential character of Wedge's claim was breach of contract, and he requested only monetary damages. The case, therefore, was properly tried to a jury.

◼ Lastly, Lipps contend the evidence was insufficient to establish the value of Wedge's interest in the business or the existence of an oral contract. When reviewing a claim of insufficient evidence, this Court neither reweighs the evidence nor rejudges the credibility of witnesses. Rather, it looks only to the evidence favorable to the judgment and any reasonable inferences therefrom. If there was substantial evidence of probative value to establish each material element of the claim, this Court will affirm the judgment. *Marathon Petroleum Co. v. Colonial Motel Properties, Inc.* (1990), Ind.App., 550 N.E.2d 778, 782.

◼ With respect to the valuation issue, Lipps contend the evidence was insufficient due to the contradictory and inconsistent testimony of Donald Fischesser. Fischesser testified that he followed IRS guidelines in making his valuation of the business, and the court admitted his 15–page report as an exhibit. Lipps' discussion regarding the inconsistencies in Fischesser's testimony is nothing more than an attempt to have this Court reweigh the evidence and rejudge Fischesser's credibility. This Court will not invade the province of the jury and resolve discrepancies in the testimony of a witness. *Planned Parenthood of NW. Ind. v. Vines* (1989), Ind.App., 543 N.E.2d 654, 659. The evidence was sufficient to establish the value of Wedge's interest in the business.

◼ Lipps contends the evidence was insufficient to establish a contract because Wedge gave no consideration for the contract and there was no "meeting of the minds" as to the terms of the contract. The evidence showed that Lipps entered into business with Wedge because Wedge had knowledge of the van conversion business and could show them the ropes. This was clearly a benefit to Lipps, and consideration may take the form of a benefit to the promissor. *Harrison–Floyd Farm Bureau Co-op. Ass'n, Inc. v. Reed* (1989), Ind.App., 546 N.E.2d 855, 857. As for a "meeting of the minds," Wedge testified that the parties had agreed to make him a

50% owner of the business. Because this Court will not reweigh the evidence or rejudge witness credibility, the evidence was sufficient to establish a contract.

Remanded with instructions to reinstate judgment on the original jury verdict; to award interest at the rate of 12% per annum from October 28, 1987, to June 30, 1988, and at the rate of 10% per annum from July 1, 1988, until satisfaction; and to convene a jury for purposes of hearing evidence, if any, on the issue of punitive damages. Affirmed in all other respects.

STATON and RUCKER, JJ., concur.