Jack WEDMORE, Appellant–Plaintiff,

v.

JORDAN MOTORS, INC. d/b/a Jordan's Ford City, Appellee–Defendant.

No. 71A05–9106–CV–204.

Court of Appeals of Indiana, Fifth District.

April 13, 1992.

Charles A. Sweeney, Jr., Sweeney, Pfeifer & Blackburn, South Bend, for appellant-plaintiff.

Robert D. Lee, James F. Groves, Hardig, Lee & Groves, South Bend, for appellee-defendant.

RUCKER, Judge.

Appellant-plaintiff Jack Wedmore appeals a trial court judgment ordering him to remit $380,000.00 of a $400,000.00 punitive damage award or suffer a new trial. Wedmore raises two issues for our review which we rephrase as:

1) Whether the trial court's order granting either remittitur or a new trial complies with Ind. Trial Rule 59(J)(7).

2) Whether the trial court erred in reducing Wedmore's $400,000.00 punitive damage award to $20,000.00.

We affirm.

The facts relevant to this appeal disclose Jordan Motors is a Ford Motors automobile dealership that buys and sells new and used cars. In late January, 1979, Jack Wedmore purchased from Jordan Motors a purportedly new 1979 Ford Thunderbird at a purchase price of $10,133.00. Within three days of the purchase, Wedmore noticed ripples on the back trunk and hood of the car and therefore returned the car to Jordan Motors. Wedmore was assured repairs would be made in the Spring.

From June, 1979, until August, 1979, Wedmore was compelled to return the car to Jordan Motors on six different occasions for repair of the damaged trunk and hood. At least one of those occasions was contentious—Wedmore threatening to sue and the owner of Jordan Motors threatening Wedmore, a small business owner, with the ruin of his business. On another occasion, Wedmore left the car at Jordan Motors for repair for a number of weeks only to find, upon his return, that Jordan Motors had done no work on the car. There was one incident where the car was returned to Wedmore with no hubcaps and the residue of the simonizing process was still on the exterior of the car. On yet another occasion, Jordan Motors painted the hood and trunk but the paint color did not match the rest of the car. Jordan Motors never properly remedied the problem of the ripples on the hood and trunk. In 1989, Jordan Motors reported retained earnings of $1,062,398.00 and had a net worth of $742,645.00.

On December 27, 1979, Wedmore filed a complaint against Jordan Motors alleging breach of warranty, fraud, misrepresentation, and strict liability in tort. Wedmore sought compensatory as well as punitive damages. Due to numerous continuances and the resignation of a trial judge, the case was not heard until November of 1990. After a three day trial, the jury returned a verdict for Wedmore and awarded him $10,000 in compensatory damages and $400,000.00 in punitive damages.

Jordan Motors filed its motion to correct errors. The trial court granted the motion and entered its special findings of fact and conclusions of law remitting compensatory damages to $5,133.00, remitting punitive damages to $20,000.00, and giving Wedmore the option to accept remittitur or in the alternative to suffer a new trial. It is from this order Wedmore appeals.

I.

Because Wedmore does not challenge the remittitur of the compensatory damages award, our review is limited to that portion of the trial court's order concerning punitive damages only. In ruling on a motion to correct errors, the trial court may take such action as will cure the error if it determines that prejudicial or harmful er-

ror has been committed. T.R. 59(J). Where the error complained of is excessive damages, the trial court may "grant a new trial subject to ... remittitur." Ind.Trial Rule 59(J)(5).

Wedmore does not contest the trial court's authority to grant a new trial subject to remittitur; however, Wedmore complains the trial court failed to follow the provisions of Ind.Trial Rule 59(J)(7) which provides:

> In reviewing the evidence, the court shall grant a new trial if it determines that the verdict of a non-advisory jury is against the weight of the evidence; and shall enter judgment, subject to the provisions herein, if the court determines that the verdict of a non-advisory jury is clearly erroneous as contrary to or not supported by the evidence, or if the court determines that the findings and judgment upon issues tried without a jury or with an advisory jury are against the weight of the evidence.
>
> In its order correcting error the court shall direct final judgment to be entered or shall correct the error without a new trial unless such relief is shown to be impracticable or unfair to any of the parties or is otherwise improper; and if a new trial is required it shall be limited only to those parties and issues affected by the error unless such relief is shown to be impracticable or unfair. If corrective relief is granted, the court shall specify the general reasons therefor. When a new trial is granted because the verdict, findings or judgment do not accord with the evidence, the court shall make special findings of fact upon each material issue or element of the claim or defense upon which a new trial is granted. Such finding shall indicate whether the decision is against the weight of the evidence or whether it is clearly erroneous as contrary to or not supported by the evidence; if the decision is found to be against the weight of the evidence, the findings shall relate the supporting and opposing evidence to each issue upon which a new trial is granted; if the decision is found to be clearly erroneous as contrary to or not supported by the evi-

dence, the findings shall show why judgment was not entered upon the evidence.

■ This court has previously determined that the latter paragraph provides the trial court with two courses of action: 1) enter an order correcting the error without a new trial, or 2) enter an order for a new trial. *Wedge v. Lipps Indus., Inc.* (1991), Ind.App., 575 N.E.2d 332, 335, citing *Borowski v. Rupert* (1972), 152 Ind.App. 9, 281 N.E.2d 502. Here, the trial court entered an order for a new trial or acceptance of remittitur. Thus, the trial court was bound to enter special findings of fact concerning (a) whether the decision is against the weight of the evidence, (b) whether the decision is clearly erroneous, or (c) whether the decision was not supported by the evidence. *Wedge, supra.* Where the trial court determines that the decision of the jury is clearly erroneous as contrary to the evidence, or not supported by the evidence, then "the findings shall show why judgment was not entered upon the evidence." T.R. 59(J)(7).

In the case before us, the trial court found that the measure and amount of punitive damages awarded by the jury was "erroneous and not supported by the evidence." *Record* at 212. The trial court then entered special findings of fact, the relevant portions of which are as follows:

19. The physical damage to Wedmore's vehicle was minor in nature.

20. The vehicle could have been repaired in 1979 at a cost of Five Hundred ($500.00) to Two Thousand ($2,000.00) Dollars.

21. The physical damage to Wedmore's vehicle posed no threat of personal injury to Wedmore or to any other human being.

22. The vehicle was still owned by Wedmore on the date of trial on November 15, 1990 and had been driven in excess of One Hundred Thousand (100,000) miles.

23. The net worth of Jordan for the year of 1989 was $742,645.00

### CONCLUSIONS OF LAW AND JUDGMENT

\* \* \* \* \* \*

5. The evidence supports a finding by the jury of misrepresentation or conceal-

ment by Jordan in the sale of the vehicle to Wedmore amounting to malice or gross negligence and that Wedmore had the right to rely on those representations. Thus, fraud or other independent torts of malice, willful and wanton misconduct or gross negligence exist to support the awarding of punitive damages and such finding is not contrary to law.

6. The evidence presented to the jury does not support a jury verdict of Four Hundred Thousand ($400,000.00) Dollars for punitive damages.

7. The evidence does support a jury verdict of Twenty Thousand ($20,000.00) Dollars in punitive damages.

\* \* \* \* \* \*

9. Based upon the evidence presented at trial the Court now finds for the plaintiff and awards the plaintiff as punitive damages the amount of Twenty Thousand ($20,000.00) Dollars.

*Record* at 215–17. According to Wedmore, these findings and conclusions are insufficient because they contain no language indicating the jury's verdict is clearly erroneous, contrary to law or against the weight of the evidence. Wedmore argues the trial court has merely substituted its own judgment for that of the jury without explaining its decision according to the mandate of Trial Rule 59.

 Special findings of fact and conclusions of law provide a theory underlying the judgment entered by the trial court. *Willett v. Clark* (1989), Ind.App., 542 N.E.2d 1354. The adequacy of special findings depends on whether the findings sufficiently disclose a valid basis underlying the legal result reached in the judgment. *Id.* The findings and conclusions of a trial court are to be liberally construed in support of the judgment. *Scott v. Kell* (1956), 127 Ind.App. 472, 134 N.E.2d 828 *reh. denied,* 127 Ind.App. 472, 137 N.E.2d 449, *trans. denied,* 127 Ind.App. 472, 141 N.E.2d 106.

 It is true where special findings are entered, we may not affirm the trial court's judgment on any ground which the evidence supports, rather we must determine if the special findings are adequate to support the trial court's decision. *Orkin Exterminating Company, Inc. v. Walters* (1984), Ind.App., 466 N.E.2d 55, *trans. denied.* However, it is also true we may consider supporting memoranda to determine the trial court's actions. *See Huff v. Travelers Indem. Co.* (1977), 266 Ind. 414, 363 N.E.2d 985 (supporting memoranda read in conjunction with special findings of fact provided basis for trial court's reasoning).

In the case before us, after the trial court entered its judgment, Wedmore filed a motion to reconsider. The court denied the motion and forwarded to counsel a letter explaining its decision. The letter, dated April 15, 1991, dictates in relevant part:

In my opinion, considering the minuscule amount of actual damages done to the vehicle and the fact that the plaintiff is still driving the vehicle in excess of 11 years after its purchase the amount of punitive damages awarded by this jury was *ridiculous!*

\* \* \* \* \* \*

One of the latest cases to be handed down by the Court of Appeals is *Warren v. Wheeler,* 566 N.E.2d 1096 (Ind.App. 1 Dist.1991) where at page 1102 Judge Robertson states:

'The amount of punitive damages should depend upon the nature of the wrong and what amount is likely to impact upon the particular defendants and prevent others from future similar wrongdoing.'

Applying such test to this case, the nature of the wrong as found to exist by the jury was very minor in nature. I therefore set the amount of $20,000.00 as punitive damages being likely to impact upon the defendant and to prevent others from such future wrongdoing.

I may well be in error as to the exact amount to be awarded. Perhaps it should be $50,000.00, maybe it should be $1,000.00—but the sum of $400,000.00 is absurd on its face.

*Supp. Record* at 9–10 (emphasis in original).

Although the trial court's written correspondence may not be considered as constituting special findings of fact, it may be considered in order to determine the meaning and effect of the court's decision. *Malo v. Gilman* (1978), 177 Ind.App. 365, 379 N.E.2d 554; *Huff, supra.* In this case the trial court's correspondence, read in conjunction with the special findings, clearly shows why judgment was not entered upon the evidence. The trial court substantially complied with the provisions of T.R. 59(J)(7). We find no error here.

## II.

■ Wedmore next contends the trial court could not properly reduce the jury's award unless it found the damages were excessive as a matter of law. *See Smith v. Syd's, Inc.* (1991), Ind.App., 570 N.E.2d 126, *trans. denied.* According to Wedmore, the trial court failed to make such a finding and failed to provide any reasoning or furnish any calculations demonstrating why the jury verdict was reduced by $380,000.00.

We have already determined the special findings in this case were in compliance with T.R. 59(J)(7). Wedmore's contention the trial court provided no reasoning in support of its decision to remit is therefore without merit. Further, although the trial court made no express finding that the damages awarded by the jury were excessive as a matter of law, such a finding was clearly implicit. The trial court determined for example the award of $400,000.00 was "ridiculous" and "absurd on its face." Requiring the trial court here to specifically assert that damages were "excessive as a matter of law," would do little more than exalt form over substance.

■ The relevant inquiry for our review is whether the trial court's judgment is clearly erroneous. Where, as here, the court enters special findings, we apply a two-tiered standard of review. *W & W Equipment Co. v. Mink* (1991), 568 N.E.2d 564, *trans. denied.* We first determine whether the evidence supports the findings and then determine whether the findings support the judgment. *Id.* Special findings and the judgment flowing therefrom will only be set aside if they are clearly erroneous. *Id.* A finding is clearly erroneous when the record is devoid of facts or inferences to support it. *Kaminszky v. Kukuch* (1990), Ind.App., 553 N.E.2d 868, *trans. denied.* A judgment is clearly erroneous when unsupported by the findings of fact and conclusions on which the findings are based or when a review of the record leaves one with the firm conviction that a mistake has been made. *DeHaan v. DeHaan* (1991), Ind.App., 572 N.E.2d 1315, *reh. denied; Ind. Dep't of Correction v. Stagg* (1990), 556 N.E.2d 1338, *trans. denied.*

Neither party to this action challenges the findings, therefore we will accept them as true and supported by the evidence of record. *Wilkin v. 1st Source Bank* (1990), Ind.App., 548 N.E.2d 170. We next examine whether judgment remitting punitive damages from $400,000.00 to $20,000.00 is supported by the findings.

■ There is no precise formula or mathematical equation which a trier of fact may call upon in divining the amount of an appropriate punitive damage award. For example, as Wedmore correctly points out, no rule in this state requires that punitive damages bear a certain ratio to compensatory damages. *See Tutwiler v. Snodgrass* (1981), Ind.App., 428 N.E.2d 1291. Hence, we decline Jordan Motors' invitation to consider that the punitive damages in this case are significantly disproportionate to the $5,133.00 compensatory damages award. Rather, the amount of punitive damages should depend upon the nature of the wrong and a determination of what amount is likely to have an impact on the particular wrongdoer and prevent others from future similar wrongdoing. *Warren v. Wheeler* (1991), Ind.App., 566 N.E.2d 1096, 1102, *trans. denied,* citing *Tutwiler, supra.* Obviously, such a determination must be made on a case by case basis.

■ In this case the findings show the physical damage to Wedmore's car was mi-

nor in nature and could have been repaired in 1979 for an amount between $500.00 and $2,000.00. The ripples in the hood and trunk of Wedmore's car posed no threat of personal injury to Wedmore or any other person and Wedmore was still driving the car at the time of trial, eleven years after its purchase. Further, the findings reveal Jordan Motors had a net worth of $742,-645.00. In reducing the punitive damages the trial court essentially determined that the nature of Jordan Motors' wrong, injury to personal property, did not support an award of $400,000.00 and the award of more than half of Jordan Motors' net worth could likely result in the financial ruin of the car dealership rather than merely deterring Jordan Motors from engaging in future similar wrongdoing.

The facts in this case support remittitur. Although we may not have reduced the award in precisely the same amount as the trial court, we cannot say the trial court's decision was clearly erroneous. The judgment was supported by the findings. Wedmore therefore may choose to accept the remittitur or go forward with a new trial on the issue of punitive damages.

Judgment affirmed.

CONOVER, J., concurs.

BARTEAU, J., dissents with separate opinion.

BARTEAU, Judge, dissenting.

In granting Jordan Motors's motion to correct error, the trial judge presented Wedmore with a choice between repeating the trial or accepting a 95% remittitur of the jury's punitive damages award, while explaining little more than that the amount was "ridiculous." Although "[j]udges need not explain the obvious, even briefly," *United States v. Beasley* (1987), 7th Cir., 809 F.2d 1273, 1280, I cannot agree that the trial judge's explanation complied with Ind.Trial Rule 59(J)(7). As our supreme court has observed, "if the [trial] court overrides the jury in its special domain and substitutes its verdict for theirs without a clear showing that the ends of justice required it, it is likely that they did not."

*State v. White* (1985), Ind., 474 N.E.2d 995, 1000.

To grant a new trial subject to remittitur is permitted by T.R. 59(J)(5). However, as explained in *Wedge v. Lipps Indus., Inc.* (1991), Ind.App., 575 N.E.2d 332, a trial judge so granting must indicate, per T.R. 59(J)(7), whether the nullified jury verdict was (a) against the weight of the evidence, (b) clearly erroneous as contrary to the evidence, or (c) not supported by the evidence. *Id.* at 335. If the verdict is against the weight of the evidence, T.R. 59(J)(7) requires the trial judge to enter special findings of fact enumerating the evidence for and against the verdict. If the verdict is clearly erroneous as contrary to, or not supported by the evidence, T.R. 59(J)(7) requires special findings explaining why judgment was not entered on the evidence instead of granting new trial or new trial subject to remittitur.

The majority views this case as involving a verdict clearly erroneous as unsupported by the evidence and a sufficient, if but implicit, explanation why judgment was not entered on the evidence. I disagree with that on both points. In my view, notwithstanding the "unsupported by the evidence" terminology employed by the trial judge, the actual basis for voiding the jury's punitive damages award was that it was against the weight of the evidence. Second, the trial judge's writings did not amount to the mandatory enumeration of the evidence. Moreover, assuming for the sake of argument that the verdict was clearly erroneous as unsupported by the evidence, I do not see the mandatory explanation why judgment was not entered on the evidence.

The trial court's conclusion # 6 was that the evidence did not support a punitive damages award of $400,000. But conclusion # 5 was that the evidence supported some amount of punitive damages. As I see it, if the evidence supported some punitive damages, then there was *some* evidence to support *any* amount of punitive damages. Thus, it cannot be said the jury's award was unsupported by the evidence, because there was some evidence

supporting punitive damages. I would agree that "unsupported by the evidence" was the basis for upsetting the verdict if the trial judge had ruled that any punitive damages award would have been inappropriate. As it was, however, the trial judge disagreed only with the $400,000 figure, and did not say that only zero would have been correct. Therefore, given *some* evidence to support an award of punitive damages, reduction of the jury's punitive damages award must be classified as a reaction to a verdict deemed against the weight of the evidence, despite the use in conclusion # 6 of the "unsupported" terminology.

Viewing the case in this light, T.R. 59(J)(7) requires that the evidence for and against the $400,000 be set out in special findings. The trial court did not do so.

The trial court did recognize that punitive damages calculus evaluates both the nature of the wrong and what amount would be large enough to punish, and make an example of, the defendant. *See, e.g., Warren v. Wheeler* (1991), Ind.App., 566 N.E.2d 1096, *trans. denied.* The "large enough to punish" variable obviously must reflect the defendant's affluence. However, of the findings quoted by the majority, *op.* at 1183, all but one relate to either compensatory damages, a non-issue here, or the nature of the wrong. Only # 23, that Jordan's net worth was $742,645 for 1989, touches on the financially punishing aspect of punitive damages.

I cannot agree that the trial court's finding "net worth was $742,645" defines this defendant's wealth in sufficient detail to permit judging against the propriety of the punitive damages award. That solitary finding appears wholly inadequate against the record facts that the defendant's gross sales in 1988 and 1989 were respectively $302,140,753 and $193,152,310; that retained earnings in 1988 and 1989 were respectively $1,391,451 and $1,062,398; and that the defendant is the largest Ford franchise in the world based on total sales. I think those facts a necessary part of a T.R. 59(J)(7) enumeration of evidence for and against the jury's decision that $400,000 is the proper amount of punitive damages:

The purpose of authorizing the trial judge to grant a new trial, when the judge considers the verdict to be against the weight of the evidence, is to erase the occasional unsupportable jury verdict. It is to supplant that which is irrational with something that is rational. An order of court can fulfill this extraordinary and extreme function only if it is based upon a complete analysis of the relevant facts and applicable law, and sets out on paper the constituent parts of that analysis. It is compliance with the arduous and time consuming requirements of the rule which provides assurance to the parties and the courts that the judge's evaluation of the evidence is better than the evaluation of the jury. *Nissen Trampoline Co. v. Terre Haute First Nat'l Bank* (1976), 265 Ind. 457, 464–65, 358 N.E.2d 974, 978, *reh'g denied.*

I am not assured, despite the assertion the verdict was "ridiculous," that the trial court's evaluation of the evidence was superior to that of the jury. Moreover, even if I agreed that the grant of new trial subject to remittitur was motivated by thoughts that the verdict was unsupported by the evidence, rather than that it was against the weight of the evidence, I would still see non-compliance with T.R. 59(J)(7), because the trial court did not explain why judgment was not entered on the evidence. This case is to me indistinguishable from *Blay v. Vogel* (1989), Ind.App., 533 N.E.2d 172, *trans. denied,* which reversed a grant of new trial following a jury verdict for the defendant. The trial court's findings in *Blay* did not comply with T.R. 59(J)(7), in that they did not enumerate the evidence opposing a key element of the plaintiff's case.

In sum, the trial judge here exercised the extraordinary thirteenth juror function to eviscerate the jury's punitive damages award, but without fully reciting the evidence for and against the award. The proper response to such non-compliance with T.R. 59(J)(7) is a remand for reinstatement of the verdict. *See White, supra; Burell v. Riggs* (1990), Ind.App., 557 N.E.2d 698, *trans. denied.* Alternatively,

the trial judge condemned the jury's verdict on no more than "a naked statement that it is erroneous," *White*, 474 N.E.2d at 1000, and so reinstatement of the verdict is warranted. I respectfully dissent.