Gary BURKE, Appellant,

v.

CITY OF ANDERSON,
Indiana, Appellee.

No. 27A04–9112–CV–412.

Court of Appeals of Indiana,
Fourth District.

April 14, 1993.

Transfer Denied June 8, 1993.

John R. Walsh II, Anderson, for appellant.

Timothy S. Lanane, Anderson, for appellee.

CHEZEM, Judge.

### Case Summary

Defendant–Appellant, Gary Burke (Burke), appeals the trial court's decision to affirm the City of Anderson's Board of Public Safety (Safety Board) ruling in favor of the City of Anderson Police Department. We affirm.

### Issue

Burke presents three issues for our review, which we restate as follows:

1. Whether the trial court's findings were adequate to meet the requirements of Trial Rule 52(A)(2) and I.C. 36–8–3–4(i);

2. Whether the evidence was sufficient to support the findings of the Safety Board;

3. Whether Burke was denied due process by the Safety Board.

### Facts and Procedural History

The specific findings of the Safety Board indicate that Burke was dismissed from the Anderson Police Department for the following reasons:

2. That on June 30, 1989, the Dept., by and through its Chief, brought certain charges against Burke, the same being:

(a) Conduct injurious to the public peace or safety;

(b) Conduct unbecoming an officer;

(c) Immoral conduct;

(d) Breach of discipline

Further, the specific conduct that comprised such charges was listed by the Chief as being:

(a) The shooting of Timothy Kutscheid;

(b) The arson of the house owned by Michael Braun;

(c) The theft of a 1977 Buick owned by David Arnold and driven by David Carmony on February 2, 1983;

(d) The collection of gambling debts owed to Cal Cannon;

(e) The supplying of inaccurate information to the Prosecutor's Office which led to the dismissal of charges against Larry Cannon.

3. That the Board finds there to be insufficient evidence to exist to substantiate the allegations of specific conduct (b) and (c), ... and the Board by a vote of 3–0 now enters such a finding of insufficient evidence as to each allegation.

4. That one Jack Vaughn has testified before the Board that Burke participated in the shooting of Timothy Kutscheid with a certain .22 calibre rifle. Vaughn further testified that Vaughn drove himself, Burke, and one David Arnold to the scene of said shooting and was present at the scene before, during and after the shooting. Vaughn further testified he was paid $1,000.00 by one Cal Cannon who alleged that Kutscheid owed to him certain disputed gambling debts. Vaughn further testified that the shooting was done with intent to scare and hurt Kutscheid. Vaughn further testified that of the said $1,000.00 he paid $500.00 to Burke for his participation in the shooting.

5. That Burke was in fact thereafter assigned to investigate the Kutscheid shooting, but that such investigation was concluded without being solved. The Board finds that such investigation occurred without Burke locating the weapon being used in the crime. The Board further finds that former department detective Rodney Davis testified that he received a "tip" during the time of this investigation that David Arnold was involved in the crime, but that lead was not pursued in the investigation.

6. That Vaughn further testified that he and Burke traveled to Indianapolis, Indiana, in the year 1982 or 1983, at the request of Cal Cannon, to collect certain checks drawn by one James Pierce on insufficient funds. These checks had been written by James Pierce to cover certain gambling debts owed by Pierce to Cannon. Vaughn's testimony was that he and Burke drove onto the premises of a certain auto sales business operated by Pierce and did there state or imply certain threats or force would be used in an attempt to collect on the checks for these gambling debts.

7. That James Pierce did testify that two men came to his business premises in 1982 or 1983 to collect on certain bad checks drawn by Pierce to Cal Cannon in payment of gambling debts. Pierce further testified that in April or March of 1989 he identified Burke in a photo line-up as being one of these two men. He further testified that these men were carrying guns and stated or implied that they were there to collect the money. Pierce also made an in-proceeding identification positively of Burke as being one of the two men.

8. That in 1982 or 1983, one Larry Cannon was charged with committing the crime of Aggravated Assault upon one Roger Smith. Roger Smith testified that Larry Cannon and another party had threatened him several days prior to the assault, and that the threat pertained to Smith's report to the Department that Cal Cannon had attempted to recruit Smith's girlfriend in certain acts of prostitution. Larry Cannon testified that he is the son of Cal Cannon.

9. That Gary Burke testified that he approached Prosecuting Attorney William F. Lawler and Deputy Prosecuting Attorney Bayne Burton in 1983 to persuade them to dismiss the charge against Larry Cannon. The Board finds that Burke told these authorities that Larry Cannon had been instrumental or in-

volved in the recovery of the murder weapon in the Bruce Wayne Johnson murder of 1982. The Board further finds that Burke told the authorities that Larry Cannon should be granted leniency by way of dismissal of the charges for his assistance pertaining to the recovery of the weapon. The Board finds, however, that the involvement of Larry Cannon in the recovery of the weapon was contrary to the testimony of witness Det. Hobart "Tip" Chandler that he recovered such weapon on James Farthing. The Board notes Burke's testimony on the recovery of the murder weapon, and specifically the fact that Burke's own police reports on the subject, which were prepared at a time near to the recovery of the weapon, are absent any mention of Larry Cannon or any other confidential source as being responsible for information pertaining to the weapon.

10. Larry Cannon's testimony before the Board was that he had mentioned to Burke that a person he knew as "Scotty" had a gun used in a serious crime, but Larry Cannon testified that the conversation would have occurred at a time which would have pre-dated the Bruce Wayne Johnson murder.

11. The Board finds that Jack Vaughn's testimony regarding Burke's involvement in the Kutscheid shooting is credible based upon: (a) the Board's observations of the demeanor of Vaughn in testifying before the Board; (b) the fact that certain information revealed by Vaughn is corroborated by facts established independently by other witnesses in testimony on the subject. For example, Vaughn's testimony that the shots came from a distance at a location to the east of the Dairy Queen Restaurant from a low calibre rifle is corroborated by Kutscheid's testimony that he heard shots from the east, which struck him in the back of the leg as he faced west, and which bullet passed completely through his leg and pants. Further, Rod Davis's testimony as a firearms expert was that shots by a larger calibre bullet would have created "horrific" wounds, lending credence to Vaughn's testimony as to the type of weapon used; (c) that Vaughn's agreement with Federal officials as to his sentencing on certain Federal drug-related charges, which agreement resulted in a reduction of his sentence by many years, requires Vaughn to testify truthfully regarding this matter.

12. That the Board finds Jack Vaughn's testimony regarding the collection of bad debts and gambling debts for Cal Cannon to be credible based upon: (a) the Board's observation of the demeanor of Vaughn in testifying before the Board; (b) the fact that such testimony is corroborated by the testimony of James Pierce who identified Burke as being a man who came onto his premises to collect such debts; (c) that Vaughn's agreement with Federal officials as to his sentencing on certain drug related charges, which agreement resulted in reduction of his sentence by many years, requires Vaughn to testify truthfully regarding this matter.

13. That the Board by a vote of 2–1 finds sufficient evidence based upon the record to substantiate the fact that Burke did participate in the shooting of Timothy Kutscheid.

14. The Board by a vote of 2–1 finds sufficient evidence based upon the record to substantiate the fact that Burke, by traveling to Indianapolis, IN, in the presence of Jack Vaughn, and going onto the business premises of James Pierce and displaying firearms and talking and acting in a threatening and displaying firearms and talking and acting in a threatening and intimidating manner, did participate in the collection of gambling debts for Cal Cannon.

15. That the Board finds by a vote of 3–0 there to be sufficient evidence based upon the record to substantiate the fact that Gary Burke did provide inaccurate information to the office of the Prosecuting Attorney of Madison County when he encouraged said officer to dismiss serious criminal charges against Larry Cannon by telling the office that Larry Cannon had been involved in the recovery of

the murder weapon in the Bruce Wayne Johnson case.

16. The Board of Public Safety finds I.C. 36–8–3–4(b) provides in pertinent part as follows:

> (b) except as provided in subsection (m), a member of the police or fire department holds officer grade until the member is dismissed or demoted by the Safety Board. A member may be disciplined by demotion, dismissal, reprimand, forfeiture or suspension upon either: (1) conviction in any Court of any crime; or (2) a finding and decision of the Safety board that the member has been or is guilty of any one (1) or more of the following: (A) neglect of duty. (B) a violation of rules. (C) neglect or disobeyance of orders. (D) incapacity. (E) absence without leave. (F) immoral conduct. (G) conduct injurious to the public peace or welfare. (H) conduct unbecoming an officer. (I) another breach of discipline.

17. The Safety Board finds that the participation of Burke in the shooting of Timothy Kutscheid constitutes (A) conduct injurious to the public peace or welfare; (B) conduct unbecoming an officer; (C) immoral conduct; and (D) breach of discipline; and for which acts dismissal from the Dept. is warranted.

18. The Safety Board finds that the participation of Burke in the collection of gambling debts owed to Cal Cannon constitutes (A) conduct injurious to the public peace or welfare; (B) conduct unbecoming an officer; (C) immoral conduct; and (D) breach of discipline; and for which acts dismissal from the Dept. is warranted.

19. The Safety Board finds that the participation of Burke in the supplying of inaccurate information to the Prosecutor's Office which led to the dismissal of charges against Larry Cannon constitutes (A) conduct injurious to the public peace or welfare; (B) conduct unbecoming an officer; (C) immoral conduct; and (D) breach of discipline; and for which acts dismissal from the Dept. is warranted.

R. 12–17.

The trial court affirmed the order of the Safety Board and found the order not to be arbitrary, capricious nor an abuse of discretion. It was also found by the trial court that there was substantial evidence on which to base the Safety Board's findings and conclusions. Burke filed a Motion to Correct Errors, alleging that the trial court failed to make specific findings of fact and conclusions of law. The trial court denied the Motion to Correct Errors.

## *Discussion and Decision*

### I

■ We must decide whether the trial court's findings were adequate to meet the requirements of Trial Rule 52(A)(2) and I.C. 36–8–3–4(i). Trial Rule 52(A)(2) requires that a court enter specific findings upon any review of actions by an administrative agency. However, the Safety Board is not an "administrative agency" within the meaning of Indiana's Administrative Adjudication Act. I.C. 4–21.5–1.

■ I.C. 36–8–3–4(i) requires the court to make specific findings and state the conclusions of law upon which its decision is made. The statute states "[i]f the court finds that the decision of the safety board appealed from should in all things be affirmed, its judgment should state that...." In its order denying Burke's Motion to Correct Errors, the trial court correctly stated, "The Court finds it does not ... need to weigh the evidence before the Safety Board and make the same or similar findings and conclusions of the Safety Board, unless the Court finds any of such findings and conclusions to be arbitrary, capricious, or an abuse of discretion." Because the trial court affirmed the ruling of the Safety Board and ordered that all specific findings of the Safety Board stand, it can be said that it entered the specific findings of the Safety Board as its own.

The trial court must assume the Safety Board decision to be correct. I.C. 36–8–3–4 states:

A decision of the safety board is considered prima facie correct, and the burden of proof is on the party appealing. All appeals shall be tried by the court. The appeal shall be heard de novo only upon any new issues related to the charges upon which the decision of the safety board was made.

Thus, the job of the trial court was not to view each finding in a de novo fashion, but rather to look for an abuse of discretion by the Safety Board. *See, e.g., City of North Vernon v. Brading* (1985), Ind.App., 479 N.E.2d 619, 622, *reh. denied, trans. denied.*

Accordingly, the trial court's findings were adequate to meet the requirements of I.C. 36–8–3–4(i).

II

We must next decide whether the evidence was sufficient to support the findings of the Safety Board. Burke, in essence, asks us to reweigh the evidence. Where special findings are entered, this court may not affirm the trial court's judgment on any ground which the evidence supports, rather we must determine if the special findings are adequate to support the trial court's decision. *Orkin Exterminating Co., Inc. v. Walters* (1984), Ind. App., 466 N.E.2d 55, *reh. denied, trans. denied.* Special findings of fact and conclusions of law provide a theory underlying the judgment entered by the trial court. *Wedmore v. Jordan Motors, Inc.* (1992), Ind.App., 589 N.E.2d 1180, 1184, *trans. denied.* The adequacy of special findings depends on whether the findings sufficiently disclose a valid basis underlying the legal result reached in the judgment. *Id.* The findings and conclusions of a trial court are to be liberally construed in support of the judgment. *Id.*

The relevant inquiry for our review is whether the trial court's judgment is clearly erroneous. Where, as here, the court enters special findings, we apply a two-tiered standard of review. *W & W Equipment Co. v. Mink* (1991), Ind.App., 568 N.E.2d 564, *reh. denied, trans. denied.* We first determine whether the evidence

supports the findings and then determine whether the findings support the judgment. *Id.* Special findings and the judgment flowing therefrom will only be set aside if they are clearly erroneous. *Id.* A finding is clearly erroneous when the record is devoid of facts or inferences to support it. *Kaminszky v. Kukuch* (1990), Ind.App., 553 N.E.2d 868, *trans. denied.* A judgment is clearly erroneous when unsupported by the findings of fact and conclusions on which the findings are based or when a review of the record leaves one with the firm conviction that a mistake has been made. *DeHaan v. DeHaan* (1991), Ind. App., 572 N.E.2d 1315, *reh. denied, trans. denied.*

An examination of the Safety Board hearing transcript reveals that the evidence supports the findings. The findings support the judgment of the trial court to affirm in all respects the ruling of the Safety Board.

III

We must finally decide whether Burke was denied due process by the Safety Board. Burke argues for the first time on appeal from the decision of the trial court that the Safety Board should have used a clear and convincing standard of evidence rather than a substantial evidence standard. By failing to raise his objection to the substantial evidence standard either to the Safety Board or to the trial court in his Motion to Correct Errors, Burke failed to preserve the issue on appeal. *See, e.g., Martincich v. City of Hammond* (1981), Ind.App., 419 N.E.2d 240; *City of Gary v. State ex rel. Condron* (1980), Ind.App., 406 N.E.2d 1231; *Ely v. City of Montpelier* (1969), 146 Ind.App. 175, 253 N.E.2d 286; *City of Evansville v. Nelson* (1964), 245 Ind. 430, 199 N.E.2d 703.

Notwithstanding Burke's waiver of this issue, the error he alleges is harmless error. It is true that case law in this state requires trial courts only to determine whether a local police administrative board's decision can be supported by substantial evidence. *See, e.g., City of*

*North Vernon*, 479 N.E.2d at 622. Burke, relying on *Matter of Moore* (1983), Ind., 453 N.E.2d 971, urges us to adopt a clear and convincing standard of proof.[1]

Our supreme court determined that a clear and convincing standard of proof should be used where:

> [i]ndividual interests at stake in a particular state proceeding are both "particularly important" and "more substantial than the mere loss of money" or necessary to preserve fundamental fairness in a government-initiated proceeding that threatened an individual with "a significant deprivation of liberty" or "stigma". *Santosky v. Kramer*, (1982) 455 U.S. 745, 754, 102 S.Ct. 1388, 1395, 71 L.Ed.2d 599.

*Matter of Moore*, 453 N.E.2d at 972.

▬ It has been held that "members of a police department may be terminated only for cause and, therefore, enjoy a protectible property interest in their continued employment with their police department." *McCarty v. City of Franklin* (1991), (S.D.Ind.), 778 F.Supp. 1465, 1470. The court in *McCarty* distinguished between a property and a liberty interest. Burke has failed to demonstrate that his protectible property interest rises to the level of a liberty interest. Indeed, it was held in *Moore* that Moore's asserted interest of maintaining his license to practice law "pales in significance when compared to the liberty interests incidental to family life," and other recognized protectible liberty interests. *Matter of Moore*, 453 N.E.2d at 973.

▬ We agree with Burke that a higher level of review should be required because there is a Fourteenth Amendment property interest at stake. We will not, however, adopt a clear and convincing standard unless a liberty interest is involved. It is reasonable, rather, to adopt a preponderance of the evidence standard where it can be demonstrated that a protected property interest exists. However, a review of the record indicates that there is sufficient evidence to affirm the ruling of the trial court under a preponderance of the evidence standard. Thus, any error attributable to the difference in evidentiary standards is harmless to Burke.

▬ Burke also argues that his right to due process was violated when the Safety Board denied certain discovery requests for production. Because the rules of discovery are applicable to administrative proceedings, we must determine whether an abuse of discretion by the Safety Board was apparent. *Vibromatic Co., Inc. v. Expert Automation Systems Corp.* (1989), Ind.App., 540 N.E.2d 659; *Beird v. Figg and Muller Engineers, Inc.* (1987), Ind.App., 516 N.E.2d 1114, *reh. denied.* We afford great discretion to the tribunal controlling discovery and reverse only upon a showing of prejudice by the moving party. *Coster v. Coster* (1983), Ind.App., 452 N.E.2d 397.

Burke failed to demonstrate prejudice as a result of the Safety Board's denial of his discovery requests. He merely asserts that he is entitled to discovery. A denial of a request for discovery in itself is not a violation of due process protection.

Affirmed.

MILLER and STATON, JJ., concur.

---

1. Standard of proof generally has been described as a continuum with levels ranging from a "preponderance of the evidence test" to a "beyond a reasonable doubt" test. The "clear and convincing evidence" test is the intermediate standard, although many varying descriptions may be associated with the definition of this intermediate test. *Matter of Moore*, 453 N.E.2d at 972, n. 2. The "substantial evidence" standard requires a lower burden of proof than the preponderance test, yet more than the scintilla of the evidence test.